988 A.2d 649

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Curtis JONES, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 2008.

Decided Feb. 16, 2010.

190

John F.X. Reilly, Media, Katayoun M. Copeland, St. Davids, George Michael Green, Delaware County District Attorney's Office, for Commonwealth of Pennsylvania.

Kathleen E. Martin, Pottstown, Alan Tauber, Philadelphia, for Curtis Jones.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice McCAFFERY.

The Commonwealth of Pennsylvania appeals from the order of the Superior Court vacating Curtis Jones's judgment of sentence for first-degree murder and robbery. The Superior Court concluded that the search warrant issued during the investigation of the murder and robbery was invalid and that evidence seized pursuant to that warrant should have been suppressed. We reverse, concluding that the Superior Court erred by not upholding the validity of a search warrant supported by probable cause.

In the early hours of April 15, 2002, Chester City police officers responded to reports of gunfire occurring on the campus of Widener University. The investigating officers spoke to a witness who stated that he had heard five gunshots and then saw, from his bedroom window, a tall individual running from the area. The witness provided a description of

the fleeing individual that was later determined to match that of Jones. The police soon thereafter located the victim's dead body lying in a pool of blood, riddled with five gunshot wounds. Shortly after the body's discovery, and based on a set of keys found on the body that suggested the victim may have been a student at the university, university personnel provided a photograph to police that appeared to identify the victim as Abdul Sesay, a 20–year–old student. No other identity materials were found on the body. At the time of his death, Sesay was rooming with fellow student Curtis Jones in a university dormitory "blocks away from" the crime scene. *Commonwealth v. Jones*, 928 A.2d 1054, 1060 (Pa.Super.2007).

At approximately 11:00 a.m. that same morning, police interviewed Jones, at which time he provided them with a version of the events of the previous evening. Jones told police that Sesay had left their dormitory room (and the company of their friends who had gathered in the room) after receiving a call on his cellular telephone. Jones told police that at the time, Sesay stated that he would be back, but he did not return.

In the early afternoon of the same day, a magisterial district judge issued a search warrant for Sesay's and Jones's dormitory room. The affidavit of probable cause stated as follows:

On 2/19/2001 [1] Officer Gizzi responded to the area of the 100[0] blk of East 18th St. for a call of shots fired. Upon arrival the officer was advised by witnesses that the shots were coming from the end of the street[.] Officer Gizzi then went to the end of the [s]treet and discovered a B/M wearing a black shirt and black jeans shorts laying [sic] on his back in a pool of blood with what appeared to be gunshot wounds to the head[.] [T]he victim was unresponsive and not breathing. Paramedics [pro]nounced the victim deceased at 0216 [h]rs.

1. The affidavit of probable cause set forth an incorrect investigation date, an error later described as caused by a hasty cut-and-paste procedure. Both the suppression court and the Superior Court determined that this technical mistake had no impact on the validity of the search warrant, a conclusion with which we do not disagree.

Det. Hampel discovered keys on the victim[']s body that belonged to Widener University[.] Upon checking with Widener Security it was found that the victim may have been a [W]idener student[.] [A] picture was given to police by Widener Security and was compared to the victim that was discovered on the 1000 blk of East 18th Street, and found [sic] that the victim and the picture provided to police were identical.

With the information provided[, p]olice believe that the victim is Abdul Sesay[,] B/M/20[,] who resides [sic] Widener University Campus at [T]hayer Hall Room # 306[.]

*Id.* at 1059. The application for the search warrant sought "Any evidence that provides Identification/Cellular Phones, Pagers, Drugs, Drug Paraphanalia [sic], handguns, bullets." *Id.*

The search warrant was executed that afternoon, while Jones was away on a shopping trip with friends in New Jersey with a cache of newly found money. Seized from the dormitory room were items that the Commonwealth asserted were observed by the police in plain view. These items were the victim's cellular telephone, which was observed to have blood on it (the blood was later determined to match that of the victim); a cellular telephone box and sales paperwork concerning this telephone in the victim's name; a Glock handgun users' manual; white t-shirts, one of which, ultimately determined to belong to Jones, contained a bloodstain on it (the blood was later determined to match that of the victim); other clothing, including shorts owned or worn by Jones but exhibiting blood later determined to be that of the victim; and three damp wash cloths. The suspicions of the police were aroused when they found the victim's cellular telephone because Jones had previously told them that the victim had taken it with him on the evening of the murder.

The police interviewed Jones once again the next day, at which time Jones changed his story. In this second interview, Jones asserted that after Sesay received the cellular telephone call, Sesay placed a gun that he owned in his waistband and then asked Jones to accompany him as he went to meet the

caller. Jones further stated that when the two neared the scene of the eventual shooting, Sesay instructed Jones to hide behind a bush in case the person they were to meet caused trouble. Sesay purportedly told Jones that in the event of trouble, Jones was to jump from behind the bush to distract the third party so that Sesay would have a better opportunity to shoot this person. Jones then stated that a truck pulled up driven by a black male and carrying a white female passenger; and, after an exchange of words between Sesay and the third-party male, gunfire erupted. The truck then abruptly drove away. Jones stated that he observed Sesay lying critically wounded on the ground. Jones then told police that he grabbed Sesay's cellular telephone and ran back to the dormitory room. At the end of the interview, Jones gave the police permission to search the dormitory room.

After this interview, Jones volunteered to go to the police criminal investigation unit to take a polygraph test. Jones was given his *Miranda* warnings [2] at that time, and he signed a form acknowledging his receipt and understanding of these warnings. During the interview that followed, Jones initially reverted to his first story that he had given the police, but shortly thereafter returned to his second version of events (that involving the purported gunfight with the truck driver) with additional embellishments.

A police diver subsequently recovered the murder weapon from a lake located behind the house of Jones's mother in New Jersey after police received an anonymous tip.[3] Jones's friends, who had accompanied him on his post-murder shopping trip, told police that on the day after the shooting, and prior to going to stores, they had accompanied Jones to his mother's house. There, his friends observed that Jones went behind the house for a lengthy period. Having obtained statements from Jones and other witnesses, and having recov-

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The murder weapon was later identified as Sesay's Glock handgun. It was established at trial that Sesay was a drug dealer.

ered the murder weapon, the police arrested Jones for the murder and robbery of Abdul Sesay.

Arguing violations of the Pennsylvania Constitution and the United States Constitution, Jones filed pre-trial motions to suppress his statements made to the police and the evidence seized pursuant to the search warrant issued on April 15th.[4] Following a hearing, the suppression court denied the motions. In explaining its determination to deny Jones's motion to suppress evidence seized pursuant to the search warrant, the trial court stated, without further analysis, that under "the totality of the circumstances and using a common sense approach," the affidavit of probable cause supporting the search warrant established that the police had probable cause to search the dorm room. Trial Court Opinion, dated June 6, 2006, at 25. The court also determined that even if the search warrant were found to be invalid, items seized pursuant to the warrant should not be suppressed because (1) Jones gave his permission to the police to search the room; and (2) the police would have inevitably discovered the evidence as part of their investigation. Jones was ultimately convicted by a jury of first-degree murder and robbery and sentenced to life imprisonment for murder, with a consecutive sentence of 66 to 132 months' imprisonment for robbery.

On direct appeal, the Superior Court vacated the judgment of sentence and remanded the matter for further proceedings after determining that the suppression court had erred by failing to suppress the evidence seized pursuant to the search warrant, which the Superior Court determined was not supported by probable cause.[5] The court held:

> As [Jones] points out, the affidavit contains no explanation as to why police would expect to find the evidence listed in the warrant in the victim's dormitory room. Nothing in the affidavit states that the victim's death was drug-related, yet

4. Apparently, all of the physical evidence that Jones wished to suppress was seized on April 15, 2002, before Jones had given his permission to search the dormitory room on April 16, 2002.

5. The Superior Court affirmed the suppression court's denial of Jones's motion to suppress statements made to the police.

some of the evidence sought clearly is so related.  Because the affidavit gives no indication that contraband or evidence of a crime will be found in the victim's dorm room blocks away from the crime scene, it is not supported by probable cause.

Moreover, although identification evidence belonging to Abdul Sesay would arguably logically be found in his room, it is clear from the warrant that police had already identified the victim as Abdul Sesay[;] thus, there was no reason to search for additional identification evidence, [and] certainly there was no stated reason.  As such, there is no probable cause to support the issuance of the search warrant for identification purposes.

For these reasons, the issuing authority had no basis upon which to authorize the search of [Jones's] and the victim's dorm room and the lower court erred in determining that the warrant was supported by probable cause and failing to suppress the evidence seized from the room.

*Jones, supra* at 1059–60.  Aside from citing general principles of law regarding an appellate court's review of the suppression court's determination that a search warrant was valid, the Superior Court cited no case law specific to its conclusions.[6]

■ We granted the Commonwealth's petition for allowance of appeal and directed the parties to address the following issue: Whether the Superior Court erred by concluding that probable cause did not support the issuance of the search warrant of a murder victim's residence for investigatory purposes.

■ Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining

---

6. Further, the Superior Court rejected the trial court's alternative arguments that the items seized should not be suppressed because Jones had given the police permission to search the dormitory room and/or that the police would have inevitably found the objects during their investigation.  The court noted that Jones had not given his permission to search until *after* the search warrant had been executed, and that the trial court had failed to articulate any support for its conclusion that the police would have inevitably uncovered the seized items.

whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 842 (2003). Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Mistler,* 590 Pa. 390, 912 A.2d 1265, 1269 (2006) (quoting *Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 881 (1998)). Thus, the conclusions of law of the courts below are subject to our plenary review. *Mistler, supra; Commonwealth v. Morley,* 545 Pa. 420, 681 A.2d 1254, 1256 n. 2 (1996).

Before the suppression court, Jones challenged the legality of the search warrant under the Pennsylvania and United States Constitutions, arguing only that the warrant was not supported by probable cause. Thus, Jones's challenge has root in Article I, Section 8 of the Pennsylvania Constitution [7] and the Fourth Amendment to the United States Constitution.[8, 9]

**7.** Article I, Section 8 of the Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. I, § 8.

**8.** The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

■ Article I, Section 8 and the Fourth Amendment each require that search warrants be supported by probable cause. "The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 899 (1991) (quoting *Commonwealth v. Miller,* 513 Pa. 118, 518 A.2d 1187, 1191 (1986)). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Thomas,* 448 Pa. 42, 292 A.2d 352, 357 (1972).

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established the "totality of the circumstances" test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. In *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1986), this Court adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, we stated:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in *Gates,* the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV.

9. Jones has never set forth an argument as to why he should be afforded greater protection under Article I, Section 8 than under the Fourth Amendment.

In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

\* \* \*

[Further,] a reviewing court [is] not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

*Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 537–38, 540 (2001).

■ As our United States Supreme Court stated: "A grudging or negative attitude by reviewing courts towards warrants . . . is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Gates, supra* at 236, 103 S.Ct. 2317 (citation and quotation marks omitted); *see also United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ("Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination.").[10]

■ Moreover, the "plain view doctrine" is wholly applicable to search and seizure issues under both the Fourth

10. This Court has more often used the nomenclature "due deference" rather than "great deference" to describe the relevant standard. *See, e.g., Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997, 1013 (2007); *Commonwealth v. Rompilla,* 539 Pa. 499, 653 A.2d 626, 632 (1995); *Commonwealth v. Baker,* 532 Pa. 121, 615 A.2d 23, 25 (1992); *Commonwealth v. Moss,* 518 Pa. 337, 543 A.2d 514, 518 (1988); and *Commonwealth v. Jones,* 506 Pa. 262, 484 A.2d 1383, 1387 (1984) (all articulating a due deference standard). However, as the question of such nomenclature is not pertinent to our disposition of the present appeal, we will not engage in any further discussion regarding this discrepancy in language or whether such discrepancy is reflective of any practical difference.

Amendment and Article I, Section 8. *See McCree, supra* at 626–28, 631. This doctrine permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself.[11] *Horton v. California,* 496 U.S. 128, 133, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *McCree, supra* at 625; *Commonwealth v. Graham,* 554 Pa. 472, 721 A.2d 1075, 1079 (1998); *see also Commonwealth v. McCullum,* 529 Pa. 117, 602 A.2d 313, 320–21 (1992) (implicitly recognizing that exigent circumstances may establish the basis for a lawful right of access).

In view of the above principles, it is readily apparent that the Superior Court erred in its conclusion that the search warrant issued in this case lacked probable cause and that the evidence seized by the police should have been excluded from introduction at trial.

Here, the police were investigating a murder. The victim appeared to be Abdul Sesay, whose dormitory room was located within several blocks of where his bullet-riddled body was found. The relevant evidence set forth in the affidavit of probable cause for the search warrant of the dormitory room was that a body was found shot to death in the City of Chester and that keys found on the body and a university student photograph indicated that a nearby dormitory room was the last known residence of the victim. Accordingly, the police sought to obtain evidence both to confirm the identity of the victim and to further their investigation. That evidence included, as listed in the application for the warrant, cellular telephones and pagers, which, if found, could provide leads with regard to any individuals who had spoken with or contacted the victim on the night of his murder.

There can be no doubt that the facts set forth in the affidavit of probable cause in this case "are sufficient in

11. The four prongs are sometimes combined as three. *See, e.g., McCree, supra* at 625, 628.

themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Thomas, supra* at 357. The affidavit of probable cause reasonably identified what was probably the last residence of the victim, within which there was a fair probability that the police would find evidence of the murder that had occurred nearby. Moreover, access to the dormitory room was required to obtain conclusive identification of the victim. The need for police to have conclusive identification was self-evident: to conduct an investigation intelligently, to have all reasonable certainty before contacting family members to inform them that their loved one has been murdered, and to provide the prosecution with the first piece of information the Commonwealth would be required to prove at a murder trial, *i.e.*, that a specific individual had been found dead.

■ The Superior Court concluded that it was not necessary for the police to obtain further information concerning the identity of the victim.[12] However, there is nothing in the jurisprudence of Article I, Section 8 or the Fourth Amendment that permits a court to invalidate a warrant supported by probable cause based on the court's belief that the police simply do not need to seek further evidence of a crime. By making such a determination, the Superior Court erred.

■ In coming to our conclusions, we must reject Jones's argument that a warrant can *never* be used as an investigative tool. Jones cites case law that purportedly supports his argument. Appellee's Brief at 5–6. However, such case law is readily distinguishable and relates to instances where the police only have a mere suspicion that a crime has been committed and/or where the police are unable to describe the

12. The Superior Court stated:

> Moreover, although identification evidence belonging to Abdul Sesay would arguably logically be found in his room, it is clear from the warrant that police had already identified the victim as Abdul Sesay[;] thus, there was no reason to search for additional identification evidence, [and] certainly there was no stated reason. As such, there is no probable cause to support the issuance of the search warrant for identification purposes.

*Jones, supra* at 1060.

items to be searched for "as is reasonably possible." *See In re Casale,* 512 Pa. 548, 517 A.2d 1260, 1263 (1986) (stating that a search warrant "is not available as a general investigatory tool to be *used in place of a grand jury.*") (emphasis added); *Commonwealth v. Smith,* 511 Pa. 36, 511 A.2d 796, 801 (1986) (stating that "mere suspicions" of a possible crime "do not constitute probable cause to support a search warrant"); *Commonwealth v. Bagley,* 408 Pa.Super. 188, 596 A.2d 811, 815 (1991) (quoting *Casale,* and determining that the police could not execute a warrant to search the home of the decedent and her surviving husband for unspecified evidence that might shed light on her death in order to determine whether a crime had been committed). Here, there was no question that a crime had been committed and that the police could, with fair probability, expect to find evidence related to that crime in what was reasonably believed to be the dead victim's dormitory room, including evidence concerning the positive identification of the victim and any persons with whom the victim may have had recent contact or with whom he may have been involved.

Pursuant to our Rules of Criminal Procedure, a search warrant *may* be used as an investigative tool, under the appropriate circumstances. Rules 200–211 govern the issuance of search warrants. Relevantly, Rule 201 defines the purposes of a search warrant as follows:

**Rule 201. Purpose of Warrant**

A search warrant may be issued to search for and to seize:

(1) contraband, the fruits of a crime, or things otherwise criminally possessed; or

(2) property that is or has been used as the means of committing a criminal offense; or

(3) property that constitutes evidence of the commission of a criminal offense.

Pa.R.Crim.P. 201.

Notable is the third enumerated purpose: to search for "property that constitutes evidence of the commission of a criminal offense." Pa.R.Crim.P. 201(3). The "comment" to

Rule 201(3) references *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In *Warden,* the United States Supreme Court *reversed* case law holding that only contraband and the fruits of a crime can be seized pursuant to the Fourth Amendment, but not "mere evidence." The Court determined that nothing in the Fourth Amendment supports a distinction between contraband and "mere evidence," concluding that evidence of a crime is clearly subject to search and seizure under the Fourth Amendment. The Court held that it is reasonable under the Fourth Amendment to conduct otherwise permissible searches for purpose of obtaining evidence that would aid in apprehending and convicting criminals. *Id.* at 306–07, 87 S.Ct. 1642; *see also Commonwealth v. Butler,* 448 Pa. 128, 291 A.2d 89, 90 (1972) (holding that a search and seizure may be for "purely evidentiary items" when there is a "nexus between the items to be seized and the suspected crime," citing and quoting *Warden, supra* at 307, 87 S.Ct. 1642).

Therefore, under Rule 201(3), we recognize that a search warrant may be issued to search for and seize property that may constitute "mere evidence" concerning a crime that has been committed. Thus, the Superior Court's holding is additionally troubling for the reason that the court appears to have substituted its judgment for that of the police with respect to the direction of the unfolding investigation. The police necessarily should have, *within all applicable constitutional and legal limits,* the widest possible latitude in determining the manner in which to conduct investigations without a reviewing court making a determination that an aspect of the investigation, based on probable cause, was unnecessary.

Finally, the record supports the suppression court's conclusion that the evidence belonging to Jones that the police seized was in plain view, as all four elements of the doctrine were satisfied: (1) the police were not in violation of the Fourth Amendment as they were on the premises pursuant to a validly issued search warrant; (2) the seized items were in plain view; and (3) the incriminating nature of the items was readily apparent in this gunshot murder investiga-

tion, as they appeared to be wearing-apparel stained with blood. Moreover, (4) the police had a lawful right of access to the items because exigent circumstances required seizure of these items. *See McCree*, 924 A.2d at 625 (setting forth the prongs that establish the plain view doctrine). Had the police not seized the items at the point of their discovery, but waited to obtain a warrant for their seizure, the evidence could possibly have disappeared or been destroyed to avoid detection of crime, thus presenting the police with the appropriate exigent circumstance allowing for a warrantless search and seizure.[13] *See McCullum, supra* at 320–21.

Accordingly, for the above reasons, we reverse the order of the Superior Court granting a new trial and reinstate the judgment of sentence.

Justice GREENSPAN did not participate in the decision of this case.

Justice EAKIN joins the opinion.

Chief Justice CASTILLE files a concurring opinion in which Justice BAER joins.

Justice TODD files a concurring opinion in which Justice SAYLOR joins.

---

13. Clothing and washcloths were not listed items to be seized in the affidavit of probable cause, and thus arguably were not subject to seizure absent exigent circumstances allowing for a plain view seizure. Concerning the particular items identified in the affidavit of probable cause, we note that the Superior Court erred by vacating the judgment of sentence based on its determination that probable cause did not exist to support the police identification of drugs or drug paraphernalia as items that were to be seized from the dormitory room. Here, no drugs or drug paraphernalia were seized. Suppression of evidence is required only for such evidence that is seized without probable cause; if other evidence seized at the same time is supported by probable cause, it shall not be suppressed. *See Commonwealth v. Bagley*, 408 Pa.Super. 188, 596 A.2d 811, 824 (1991); *see also Commonwealth v. Grossman*, 521 Pa. 290, 555 A.2d 896, 900 (1989) ("[I]n any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression.").

Chief Justice CASTILLE, concurring.

I join the Majority Opinion. I agree that the search warrant at issue in this straightforward case was supported by probable cause, and the items seized fell within the proper scope of the warrant. I write separately only to address the proper standard of review applicable to the probable cause determination of a magistrate judge under the Fourth Amendment which is, in essence, a question of the level of review that is contemplated by the United States Supreme Court, the ultimate authority on the Fourth Amendment.

The Majority notes that our cases have inconsistently described the review as involving "due deference" and "great deference" in search warrant cases. Maj. Op. at 200 n. 10, 988 A.2d at 656 n. 10. The Majority then notes that "the question of such nomenclature is not pertinent to our disposition of the present appeal." *Id.* It is correct that we did not specifically accept review in this case to resolve that particular discrepancy in "nomenclature," nor did we accept review to determine the appropriate level of deference, if any, that should be accorded probable cause determinations by magistrates in warrant cases.

On the other hand, identification of the proper standard of review is essential to the proper disposition of any case; the difference between "great," "due" and "no" deference can be outcome-determinative; appeals involving challenges to warrants are common; and the tension in the relevant cases is apparent. In such circumstances, I believe some commentary is appropriate to guide the bench and bar, and to that end I offer my own preliminary view.

Quoting *Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 538–40 (2001), the Majority begins its probable cause analysis by describing the reviewing court's responsibility to "accord deference to the issuing authority's probable cause determination," noting that its task is "not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant." Maj. Op. at 200, 988 A.2d at 655. The Majority

also quotes *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), for the proposition that the "preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." Maj. Op. at 200, 988 A.2d at 656.

But the Majority also notes that, more often than not, this Court has described our review of such probable cause determinations as employing an ordinary or "due" deference. Maj. Op. at 200 n. 10, 988 A.2d at 656 n. 10. *See, e.g., Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997, 1013 (2007); *Commonwealth v. Rompilla,* 539 Pa. 499, 653 A.2d 626, 632 (1995); *Commonwealth v. Baker,* 532 Pa. 121, 615 A.2d 23, 25 (1992); *Commonwealth v. Moss,* 518 Pa. 337, 543 A.2d 514, 518 (1988); *Commonwealth v. (Theodore) Jones,* 506 Pa. 262, 484 A.2d 1383, 1387 (1984); *Commonwealth v. Tolbert,* 492 Pa. 576, 424 A.2d 1342, 1344 (1981); *see also Torres,* 764 A.2d at 537–38 (omitting "substantial" when actually setting forth standard of review); *id.* at 545 (Castille, J., concurring and dissenting) (criticizing majority's "fail[ure] to accord the issuing authority the deference due its decision" and contrasting due deference with "the sort of hypertechnical, legalistic, hindsight scrutiny that animated the now discarded *Aguilar/Spinelli* review of warrant affidavits") (citing *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). Moreover, as Madame Justice Todd develops, a careful reading of the High Court's precedent suggests that it may not have intended any specially deferential standard for reviewing the purely legal question of whether certain uncontested facts amount to probable cause.

We must accept pronouncements from the High Court as they are, and that Court has spoken of some form of heightened deference in this area. *See Leon, supra.* If the deference is intended to extend to the assessment of probable cause in warrant affidavit review, where no fact-finding or credibility determination within the special bailiwick of the magistrate is involved, it is indeed difficult to understand why any measure of "deference" should apply at all. When the question is a purely legal one (such as the question of whether an agreed-

upon set of facts and circumstances establishes probable cause), there is no jurisprudential reason for a reviewing court to defer to the judgment of any entity below: whether it be the trial judge, a magistrate, or a police officer in the field.

Other courts and commentators have struggled over what to make of the suggestion by the High Court that "great deference," rather than *de novo* review, should be exercised when reviewing a magistrate's probable cause determination in a warrant case. A leading academic authority on the Fourth Amendment cogently summarizes the issue and suggests a useful and harmonizing analytical construct which mirrors my own considered view:

> The point, in brief, is simply this: in a warrant case, the appellate court has the same record as the magistrate (that is, the affidavit) and thus is in essentially as good a position as the magistrate was to make the probable cause determination. This being so, one could even argue for de novo review here (as one state has done, and as has sometimes been required elsewhere as to similar situations in which the review was one of factfinding only via documents), except for the fact that we want to give the magistrate's decision some deference "in the express service of the policy of encouraging resort to warrants." Because of this policy, there is good reason why "the reviewing court must give deference to ... all reasonable inferences drawn by the issuing judge, and then decide whether, based upon the facts explicitly stated in the affidavit, supplemented by those reasonable inferences, the affidavit establishes probable cause." But that, it is submitted, is a lesser deference than practicalities make essential as to a suppression hearing judge's decision after hearing conflicting testimony.

LaFave, Wayne R., 6 Search and Seizure § 11.7(c) 455–56 (4th ed. 2004) (footnotes omitted). *See generally id.* at 451–56 (quoting and discussing federal and state cases).

I view the tension in this area, and the concomitant inconsistencies of expression in the caselaw, as resulting from: (1) the special importance of warrants, an investigative process which interposes a judicial officer between state action and individual

rights, a process courts seek to encourage;  and (2) the related importance of learning from the correction of debunked cases such as *Aguilar* and *Spinelli* that the task of warrant review must be conducted in a practical, and not a hypertechnical, fashion.  "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis ... for conclud[ing] that probable cause existed.' "  *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921, 925 (1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)) (alterations and omission in original).

I do not view this sort of real-world "deference" to the practical aspects of warrant review as diluting the power of a reviewing court to render its own judgment on a purely legal question, such as the existence of probable cause.  In warrant review, when the facts are not in dispute, the question becomes whether those facts, considered in their totality, amount to probable cause.  However, in applying that standard, we must be mindful of the Fourth Amendment values that are at stake and the realities of law enforcement.  Like the Majority, I believe that the Superior Court erred in finding the warrant in this case unsupported by probable cause.[1]

Justice BAER joins this concurring opinion.

1.  Generally, this Court does not accept a discretionary appeal merely to correct error.  *See* Pa.R.A.P. 1114 ("appeal will be allowed only when there are special and important reasons therefor").  However, the error in this case compromised a murder prosecution in an instance where police secured a search warrant;  supervisory correction is warranted in such circumstances.

As further basis for the conclusion that the Superior Court erred, the Majority cites Pennsylvania Rule of Criminal Procedure 201(3) and *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), correctly observing that "a search warrant *may* be used as an investigative tool, under the appropriate circumstances."  Maj. Op. at 203, 988 A.2d at 657 (emphasis in original).  I recognize the force in Justice Todd's discussion of the proper approach to such warrants.  But in light of the Majority's controlling determination that probable cause existed to support the magistrate's decision to issue the search warrant here, as well as the fact that the items seized were properly the subject of such a warrant, I agree that the Superior Court panel plainly erred in granting relief based on its determination that probable cause did *not* exist to support identification of drugs or drug

Justice TODD, concurring.

I concur in the Majority Opinion insofar as I believe it reaches the correct legal result, namely, that sufficient probable cause existed for the magisterial district judge to issue a search warrant for the dormitory room jointly shared by Appellee and the decedent, Abdul Sesay, in order to confirm his identity as the shooting victim the police found lying dead on the street in Chester, Pennsylvania. Beyond this narrow agreement with the Majority, I write to make two additional points. First, I agree wholly with Chief Justice Castille's observation in his Concurring Opinion that, although we did not grant allocatur to specifically address the issue of the correct standard of review to be utilized by appellate courts in reviewing a magistrate's determination of probable cause of a search warrant, application of the proper standard of review by an appellate court is essential to its adjudicative function. I am in accord with his cogent discussion, and, presently, offer only a few additional observations on this subject. Second, I believe the limits of the use of a search warrant as an investigative tool to gather evidence, recognized by the United States Supreme Court as required by the Fourth Amendment to the United States Constitution, are worthy of further elaboration, and I do not agree with the Majority's conclusion that the Superior Court improperly substituted its judgment for that of the police in the conduct of an investigation; rather, I conclude that the court was simply performing its proper duty of appellate review.

As the Majority has noted, and as Chief Justice Castille has amplified in his Concurring Opinion, there has been some difference in the language used by the United States Supreme Court and the language used by our Court to describe the proper standard of review an appellate court must utilize to review a magistrate's determination of probable cause for the issuance of a search warrant. In its decision in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court stated that the magistrate's

paraphernalia as items to be seized, as such items were not actually seized. Maj. Op. at 205 n. 13, 988 A.2d at 658–59 n. 13.

probable cause determination should be paid "great deference by reviewing courts." *Id.* at 236, 103 S.Ct. 2317 (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). The Court, however, never explicitly provided a definition of the concept of "great deference" in either *Gates* or *Spinelli.* Although the *Spinelli* Court cited *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), as the progenitor of the phrase "great deference," *see Spinelli,* 393 U.S. at 419, 89 S.Ct. 584 (citing *Jones* at 270–71, 80 S.Ct. 725), I note that the *Jones* Court did not use this terminology anywhere in its opinion and, thus, likewise did not provide guidance as to the parameters of its scope. Importantly, though, the Supreme Court in *Gates* did not view its decision as announcing a new standard of appellate review but, rather, indicated it was merely reaffirming the "traditional standard for review of an issuing magistrate's probable cause determination," which is that a reviewing court should determine whether the facts in the affidavit showed that the magistrate had a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Gates,* 462 U.S. at 236, 103 S.Ct. 2317 (citation and internal quotation marks omitted).

Subsequently, in the case of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court again indicated that a magistrate's determination should be afforded "great deference." However, it also clearly established the limits of this concept by making abundantly plain that a reviewing court was not required to exhibit a degree of deference which would unduly constrain it in the performance of its duty to review the magistrate's actions, holding:

Deference to the magistrate is not boundless. It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based. Second, the courts must also insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police. A magistrate failing to manifest that neutrality and

detachment demanded of a judicial officer when presented with a warrant application and who acts instead as an adjunct law enforcement officer cannot provide valid authorization for an otherwise unconstitutional search. Third, reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. Even if the warrant application was supported by more than a "bare bones" affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect.

*Leon*, 468 U.S. at 914–15, 104 S.Ct. 3405 (internal quotation marks, citations and footnote omitted).

Our Court adopted the *Gates* "substantial basis" test in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985), as the standard of review Pennsylvania appellate courts are to use in evaluating a challenge to the sufficiency of probable cause to support the issuance of a search warrant under Article I, Section 8 of the Pennsylvania Constitution; however, we did not, in that case, explicitly hold that a heightened or elevated degree of deference is due a magistrate's legal determination of the existence of probable cause beyond what we normally afford all such legal determinations that we review.[1]

1. I note that the highest courts of two of our sister states have concluded that, in the absence of a specific declaration by the United States Supreme Court that a particular standard of appellate review is mandated in order to enforce fundamental rights secured by the United States Constitution, their appellate courts may utilize a more exacting standard of review of claims of violations of federal constitutional rights than that articulated by the United States Supreme Court for such claims. *See, e.g., State v. Navas*, 81 Hawai'i 113, 913 P.2d 39 (1996) (expressly rejecting the *Gates* standard of review in favor of *de novo* review of a magistrate's determination of probable cause because the

Following *Gray,* when discussing the requisite level of deference to be afforded the magistrate's determination by a reviewing court, our Court has, in the vast majority of our decisions, referred to it as simple "deference," or "due deference." *See Torres,* 564 Pa. at 96, 764 A.2d at 538 ("the reviewing court must accord deference to the issuing authority's probable cause determination"); *Commonwealth v. Baker,* 532 Pa. 121, 127, 615 A.2d 23, 25 (1992) ("[D]eference is to be accorded a magistrate's finding of probable cause"); *Commonwealth v. Jones,* 506 Pa. 262, 270, 484 A.2d 1383, 1387 (1984) (same); *Commonwealth v. Rega,* 593 Pa. 659, 686, 933 A.2d 997, 1013 (2007) ("Due deference will be given to the conclusions of the issuing magistrate."); *Commonwealth v. Rompilla,* 539 Pa. 499, 512, 653 A.2d 626, 632 (1995) (giving due deference to issuing magistrate when conducting review of search warrant affidavit); *Commonwealth v. Moss,* 518 Pa. 337, 344, 543 A.2d 514, 518 (1988) ("Warrant applications must be read in a common sense, non-technical way, 'giving due deference to the conclusions of the issuing magistrate.'" (quoting *Commonwealth v. Council,* 491 Pa. 434, 444, 421 A.2d 623, 628 (1980)))).[2]

There have been a few occasions since our decision in *Gray,* however, where our Court has used language differing from that used in the precedent discussed above. In *Commonwealth v. Weidenmoyer,* 518 Pa. 2, 9, 539 A.2d 1291, 1294 (1988), our Court, citing to *Gates,* stated that the determination of the issuing authority should be given "great deference,"

Hawaii Constitution provided more extensive protections than the United States Constitution); *State v. Thurman,* 846 P.2d 1256 (Utah 1993) (holding that, because Utah Supreme Court had authority under its state constitution to manage the appellate process and supervisory authority over all state courts, it had power to fashion standards of review and, thus, absent any prohibition by the United States Supreme Court or by Congress, it was authorized to adopt its own standard of review for questions of federal law, including the voluntariness of consent given for a police search in order to render it lawful under the Fourth Amendment).

2. Even though our Court quoted *Council,* which was a pre–*Gates* case, for this proposition, I view this quotation as a reaffirmation of the principle that due deference is what is required to be shown a magistrate's legal conclusion regarding probable cause.

and in *Torres,* our Court also used the term "substantial deference" after initially articulating the standard of review as simple deference.[3] However, these two isolated references, in and of themselves, do not alter the nearly uniform and consistent articulation by our Court of a standard of ordinary deference for appellate review of a magistrate's determination of probable cause for the issuance of a search warrant.

Ultimately, I do not view this articulation of a standard of ordinary deference by our Court as contravening the fundamental teachings of *Gates* which are, as Chief Justice Castille has reminded in his concurring opinion, that the Fourth Amendment expresses a "strong preference for searches conducted pursuant to a warrant," *Gates,* 462 U.S. at 236, 103 S.Ct. 2317, and that warrant review is not to be "hypertechnical" but conducted in a "commonsense manner." *Id.* As the United States Supreme Court underscored in *Leon,* in deferring to the magistrate, a reviewing court is not required to relinquish its duty to carefully consider whether a magistrate made the proper legal determination that, under the totality of the factual circumstances as pled in a search warrant affidavit, constitutionally sufficient probable cause existed to issue the warrant. Therefore, no matter how it has been characterized—as ordinary deference, due deference, substantial deference, or great deference—appellate review of the magistrate's **legal** determination of probable cause, as with appellate review of all legal questions, remains plenary. *See Commonwealth v. Coleman,* 574 Pa. 261, 272, 830 A.2d 554, 560 (2003) ("[S]ince no factual question is involved in a four corners analysis of the sufficiency of a warrant affidavit, the issue is one of law as to which our review is plenary."); *McNeil v. Jordan,* 586 Pa. 413, 427, 894 A.2d 1260, 1268 (2006) ("Our caselaw long has held that questions of law are accorded full appellate review, and our consideration is plenary."); *Guido v. Township of Sandy,* 584 Pa. 93, 101, 880 A.2d 1220, 1225 (2005) (since parties did not dispute facts, the issue presented was a purely legal one and our court's review was plenary). In conducting this plenary review, an appellate court of this

3. *See Torres,* 564 Pa. at 101, 764 A.2d at 540.

Commonwealth is in no way required to defer to the legal conclusions of the courts below if those conclusions are erroneous. *Commonwealth v. Mistler*, 590 Pa. 390, 396–97, 912 A.2d 1265, 1269 (2006); *Commonwealth v. Millner*, 585 Pa. 237, 247, 888 A.2d 680, 686 (2005). As Chief Justice Castille has aptly stated in his concurring opinion, "When the question is a purely legal one (such as the question of whether an agreed-upon set of facts and circumstances establishes probable cause), there is no jurisprudential reason for a reviewing court to defer to the judgment of any entity below: whether it be the trial judge, a magistrate, or a police officer in the field." Concurring Opinion (C.J. Castille) at 208, 988 A.2d at 660. Thus, neither our Court nor the Superior Court is compelled to defer to a magistrate's legal conclusion that probable cause existed for the issuance of a warrant if the facts as set forth in the affidavit fail to provide a substantial basis for that conclusion. *See, e.g., Torres,* 564 Pa. at 101, 764 A.2d at 540 (reversing Superior Court because affidavit of probable cause did not set forth a substantial basis to issue a warrant to search defendant's apartment since it contained insufficient facts about the basis of knowledge of the anonymous informants or their veracity in order to establish the reliability of the information they gave to the police).

The Superior Court panel below conducted its appellate review in accordance with the principles of warrant review articulated in *Gates* and *Gray.* It examined the totality of the facts as pled in the affidavit, which was by no means a model of clear draftsmanship, and, accepting them as true, concluded as a matter of law that these facts furnished the magistrate "no basis" to approve the search warrant. *See Commonwealth v. Jones,* 928 A.2d 1054, 1058–60 (Pa.Super.2007) (citing *Gray and Gates* ). The panel's determination of the correctness of the lower court's legal conclusions was its rightful and proper task as a reviewing court. Indeed, our present reversal of the Superior Court is an exercise of that very same function of appellate review, pursuant to our duty under our Commonwealth's Constitution to be the final arbiters in the Pennsylvania Judicial System of such legal determinations.

*See Commonwealth v. Pinney,* 474 Pa. 210, 213, 378 A.2d 293, 295 (1977) ("[I]t is this Court's duty to make an independent examination of probable cause, apart from any conclusions drawn by a trial judge or other appellate court, to ensure that the constitutional criteria established to safeguard Fourth Amendment rights have been respected.") Although our Court presently arrives at a different legal conclusion than that reached by the Superior Court, our decision should be construed as nothing more than the simple correction of a legal error by the Superior Court, which we have had occasion to do in the past since reasonable judicial minds can and do differ, at times, on what the law requires under certain circumstances. It should not be considered a departure from the traditional standard of review under which the appellate courts of this Commonwealth resolve challenges to a magistrate's probable cause determination.

Next, I respectfully disagree with the Majority's assertion that the Superior Court panel "appears to have substituted its judgment for that of the police with respect to the direction of the unfolding investigation." Majority Op. at 204, 988 A.2d at 658. Although the Majority rightly recognizes that a search warrant may be used as an investigative tool under the appropriate circumstances, I believe the Majority has not given sufficient recognition to the fundamental constitutional limitations attendant to its use for this purpose. As the Majority has noted, Pa.R.Crim.P. 201(3) expressly permits the use of a warrant "to search for and to seize ... property that constitutes evidence of the commission of a criminal offense." This rule derives from the United States Supreme Court decision in *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

In *Hayden,* the Supreme Court reconsidered the question it had addressed in its earlier jurisprudence as to whether the Fourth Amendment permitted the police to search for and seize purely evidentiary materials related to the commission of a crime. Previously, the Court had established a distinction between searches and seizures involving "mere evidence" of a crime as opposed to searches and seizures conducted for the

purpose of recovering contraband and the fruits of a crime, having decided that the former was proscribed by the Fourth Amendment while the latter was permitted.[4]   The *Hayden* Court cast aside this distinction, however, and held "it is reasonable, **within the terms of the Fourth Amendment,** to conduct otherwise permissible searches for the purpose of obtaining evidence which would aid in apprehending and convicting criminals." 387 U.S. at 306, 87 S.Ct. 1642 (emphasis added).   In arriving at its holding, the Court took care to emphasize the vital purposes served by the Fourth Amendment, which it reminded was

> a reaction to the evils of the use of the general warrant in England and the writs of assistance [5] in the Colonies, and was intended to protect against invasions of the sanctity of a man's home and the privacies of life from searches under indiscriminate general authority.   Protection of these interests was assured by prohibiting all unreasonable searches and seizures, and by requiring the use of warrants, which particularly describe the place to be searched, and the persons or things to be seized, thereby interposing a magistrate between the citizen and the police.

*Id.* at 301, 87 S.Ct. 1642 (internal quotation marks and citation omitted).   Thus, the Court mandated that a warrant which

4.   *See Gouled v. United States,* 255 U.S. 298, 309, 41 S.Ct. 261, 65 L.Ed. 647 (1921) (holding that a warrant "may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding . . . ").

5.   The United States Supreme Court previously described these instrumentalities and their attendant deleterious impact on the persons and property of our colonial forebears, thusly:

> The general warrant in which the name of the person to be arrested was left blank, and the writs of assistance[, which gave British customs officials the unlimited authority to search anywhere for goods imported in violation of the Crown's tax laws, *Stanford v. Texas,* 379 U.S. 476, 481, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965) ], against which James Otis inveighed, both perpetuated the oppressive practice of allowing the police to arrest and search on suspicion. Police control took the place of judicial control, since no showing of 'probable cause' before a magistrate was required.

*Henry v. United States,* 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) (footnotes omitted).

authorizes a search for evidence must comport with the same requirements which the Fourth Amendment places on search warrants for the fruits or instrumentalities of crime, or contraband, specifying:

> There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.

*Hayden,* 387 U.S. at 307, 87 S.Ct. 1642.

The Supreme Court has consequently made quite clear that the Fourth Amendment does not allow warrants of this nature to be used as a general investigative tool permitting the police to *carte blanche* seize any person's private property, papers, or effects in the conduct of a criminal investigation. In order for a magistrate to issue a valid warrant allowing the police to search for and seize evidence of a crime, the police must demonstrate probable cause to the magistrate that the items sought by the warrant have a connection to the crime or crimes under investigation. *See Commonwealth v. Butler,* 448 Pa. 128, 131, 291 A.2d 89, 90 (1972) (applying *Hayden* to find a nexus between a warrant authorizing the seizure of a suspect's clothing and the crime being investigated, a stabbing, since there was probable cause to believe the suspect's clothing would be covered in blood, inasmuch as the suspect had been identified by a witness as a participant in the stabbing). It is therefore the obligation of a reviewing court to ensure that an affidavit in support of the issuance of such a warrant has furnished a substantial basis for a magistrate to conclude that probable cause of this required nexus exists. The Superior Court's review of the affidavit of probable cause in the case *sub judice* was completely in accordance with this obligation and was not, as the Majority suggests, an untoward substitution of its judgment for that of the police as to the direction and conduct of an investigation.

My examination of the affidavit of probable cause, in accordance with the principles articulated in *Hayden* and *Butler,*

compels me to conclude that the facts pled therein failed to set forth a substantial basis for the magistrate to conclude that there was probable cause of a connection between "pagers, drugs, drug paraphanalia [sic] handguns, bullets," *Jones,* 928 A.2d at 1059, and the crime which the police were investigating—the shooting death of Abdul Sesay. The affidavit is utterly devoid of any facts which would establish a fair probability that Sesay's death was somehow drug-related or that items relating to drug dealing would be found in the dormitory room. Likewise, as the shooting of Sesay took place in a public area, blocks away from the room, the affidavit fails to set forth any facts which would indicate why there was a fair probability that handguns or bullets involved in the shooting could be found within the room. However, as the Majority notes, none of these items was found during the execution of the warrant; thus this deficiency in the affidavit did not, in this instance, necessitate the suppression of any evidence.

By contrast, the affidavit did furnish a substantial basis for the magistrate to conclude that there was probable cause that other evidence identifying Sesay would be found in the room since it set forth factual details regarding the police investigation which established a fair probability that such evidence would be in the room, namely, the police discovery of his keys to the room, and their confirmation with Widener University security that Sesay was a student there. I therefore agree with the Majority that this identification evidence was necessary to establish the identity of the victim of a murder, which is a fact which the Commonwealth must prove at trial.[6] Hence, since this portion of the affidavit provided probable cause of a nexus between the sought after information and the crime being investigated, the search warrant was valid,[7] and the pieces of evidence the police discovered—Sesay's bloody cell phone and shirt, and Appellee's bloody shorts with Sesay's

6. *Commonwealth v. Elliott,* 549 Pa. 132, 142 n. 10, 700 A.2d 1243, 1248 n. 10 (1997).

7. *See, e.g., Commonwealth v. Hernandez,* 594 Pa. 319, 334, 935 A.2d 1275, 1283 (2007) (holding that so long as there is some competent evidence set forth in the search warrant affidavit establishing probable cause the warrant will be considered valid).

blood on them—were observed by the police in plain view after their entry into the room, and, consequently, were lawfully seized. *See Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (items observed by police while serving a valid search warrant were properly seized since they were in plain view and their incriminating evidentiary nature was immediately apparent); *Commonwealth v. McCree,* 592 Pa. 238, 924 A.2d 621 (2007) (plurality) (although issuing a plurality opinion, the majority of the Court agreed *Horton* set forth the requirements for seizure of an object without a warrant which is in plain view).

It is for these reasons I concur in the result reached by the Majority.

Justice SAYLOR joins this concurring opinion.