J-A23011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ORIEN ROBERT MCBRIDE | : | |
| | : | |
| Appellant | : | No. 1205 WDA 2018 |

Appeal from the Judgment of Sentence Entered, July 26, 2018,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s):  CP-02-CR-0009591-2017.

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED OCTOBER 18, 2019**

Orien Robert McBride appeals from the judgment of sentence imposing an aggregate term of incarceration of nine to 18 months, twelve months of electronic monitoring, and three years' probation for various violations of the Uniform Firearms Act.  McBride claims the trial court should have suppressed the gun that produced his conviction, because he believes it was obtained unconstitutionally.  We affirm the order denying suppression, because the gun was not the fruit of the initial, allegedly-unconstitutional search, and McBride waived his attack against the breadth of the second search that uncovered the gun.

The suppression court set forth the relevant facts as follows:

> Officers Darrin Young and Brian Coll of the McKees Rocks Police Department testified at the Suppression Hearing on April 23, 2018.  Officer Young testified that officers from his

department were dispatched to the 1300 block of Vine Street for a report of a male and female arguing. Officers were advised that the male and female were running through a store parking lot.

Officer Tyler Roche of Stowe Township Police Department was in the area and observed a male ([McBride]) and a female fitting the description. He and Allegheny County Housing Authority Officer Mancino chased [McBride] toward Church Avenue. Officer Roche observed [McBride] run into the yard of 1245 Church Avenue. Officer Young testified Officer Roche reported to him that he observed [McBride] running towards the backyard of 1245 Church Avenue and he heard the sound of a metal fence clanking. [McBride] exited the front door of 1245 Church Avenue, where he was met by Officer Mancino.

[McBride's] girlfriend, Joann Moore, told the officers that she lived at the residence and [McBride] sometimes stayed there. The Officers asked Ms. Moore for permission to search the residence and at first she was unsure of what to do. Officer Young testified that at that time he intended to go to the police station to type up a search warrant application. Before he obtained the warrant, however, he was advised that Ms. Moore had given the officers permission to search the residence. Officer Young testified that Officer Roche located a firearm in the charcoal grill which was up against the fence in the backyard.

[McBride] was charged with three (3) counts of Violations of the Uniform Firearms Act, specifically one count of Person Not to Possess a Firearm, one count of Carrying a Firearm without a License, and Possessing a Firearm with Manufacturer Number Altered.

[He] appeared before [the court of common pleas] for a hearing on his Pretrial Motion to Suppress, but that Motion was denied at the conclusion of the hearing . . . .

Trial Court Opinion, 1/22/2019, 2-3 (citations to the record and footnotes omitted).

McBride raises two issues on appeal:

      I.      Whether . . . police began performing a "protective sweep" for evidence, not people, without consent or a warrant in violation of the federal and Pennsylvania constitutions?

      II.     Whether the . . . [secondary] search . . . exceeded the scope of [Ms. Moore's] consent . . . in violation of the federal and Pennsylvania constitutions?

McBride's brief at 5.

In both of these issues, McBride claims the suppression court erred by denying his motion to suppress. When this Court reviews the denial of a motion to suppress, our scope and standard of review is well-settled. The scope of review is limited to "the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations omitted). Additionally, appellate courts are limited to reviewing only the evidence adduced at the suppression hearing. *In re L.J.*, A.3d 1073, 1086 (Pa. 2013).

Our standard of review "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Jones*, 988 A.2d at 654 (citations omitted). Notably, "the suppression court's findings are not binding on an appellate court, 'whose duty it is to determine if the suppression court properly applied the law to the facts.'" *Id.* (quoting *Commonwealth v. Mistier*, 912 A.2d 1265, 1269 (Pa. 2006)). Thus, the suppression court's conclusions of law are subject to *de novo* review. *Id.* (citations omitted).

- 3 -

*A.      The Commonwealth's Evidence Was **NOT** the Fruit of the First Search.*

In his first issue, McBride claims that, prior to Ms. Moore's consent, the police had already unlawfully searched her residence for the hidden gun.[1]  He contends the police conducted a search for evidence after arresting him, and an evidentiary search can never be a protective sweep, as the police asserted at the suppression hearing.  It was, instead, a warrantless search for evidence, according to McBride's theory, which tainted the entire investigation, negated Ms. Moore's consent to the secondary search that uncovered the gun, and rendered that gun fruit of the poisonous tree.

Even if the initial search was not a constitutionally permissible protective sweep, as McBride claims, no harm befell him from that first search.  In short, he has not convinced us that the firearm is the fruit of the first search.

According to Officer Coll, investigators uncovered nothing of note during the initial sweep of Ms. Moore's residence.  Moreover, nothing about this initial walk-through impacted Ms. Moore's subsequent consent to a more-thorough, secondary search of her property.  McBride's assertion that it did is mere supposition, without reference to legal authority.  **See** McBride's Brief at 33.

---

[1] The suppression court concluded this issue is moot.  **See** Trial Court Opinion, 1/22/19, at 5.  That is incorrect.  **See, e.g., In re R.D.**, 44 A.3d 657, 680 (Pa. Super. 2012) (holding that an issue is only moot if the court can no longer render an order of relief due to changes in facts or law).  Because no changes in facts or law have rendered this Court incapable of granting McBride relief, the issue is not moot, and we reach its merits.

As the suppression explained:

> Ms. Moore consented, because she had nothing to hide. When asked why she consented to the search, she answered, "Basically we didn't do anything. I didn't do nothing to — I didn't have nothing to hide." ST at 33, 8-10. She also testified that she believed her lease required her to consent to the officers' request. *See* ST at 33, 22-25 and 34, 1-5. Ms. Moore answered yes to whether she was concerned about the level of intrusion that would occur if they did an actual search warrant search of the home. *See* ST at 33. Based on the totality of the circumstances, this Court found that Ms. Moore voluntarily consented to the search. Her concern that the search would be more intrusive if police were required to obtain a warrant did not vitiate the consent.

Trial Court Opinion, 1/22/19, at 6-7. Thus, the suppression court's factual findings contradict the claim by McBride that Ms. Moore consented to the second search because of the investigators' initial, pre-consent search.

And it was that second consented-to search that actually yielded the gun, so, even if the initial search was unconstitutional, that constitutional violation did not produce the evidence that the Commonwealth used to convict McBride. The firearm was therefore not, as McBride asserts, the "fruit of the poisonous tree." McBride's Brief at 12; *see, e.g., Wong Sun v. United States*, 371 U.S. 471 (1963).

"[W]hether evidence is the fruit of illegal police conduct is resolved by determining whether, assuming the primary illegality has been established, the challenged evidence has been obtained by exploitation of that illegality, or instead, by means sufficiently distinguishable to be purged of the taint of the primary illegality." *Commonwealth v. Santiago*, 290 A.3d 912, 924 (Pa.

Super. 2019). Assuming, without deciding, that law enforcement's initial sweep of the apartment was not valid, McBride establishes no meaningful nexus between that initial, fruitless search and Ms. Moore's consent to the second, fruitful one.

According to Ms. Moore's and the officers' testimony, her consent arose from a concern that the police were on the verge of obtaining a search warrant. She also hoped that the investigators would make less of a mess if they searched with her consent than they would if they were executing a search warrant. Nothing of record supports McBride's claim that the consent his girlfriend provided was based upon the fact that the police had previously swept her property at the time of McBride's arrest.

Thus, the post-consent, police action that actually uncovered the gun was sufficiently distinguishable from the pre-consent police action that did not. If the pre-consent search violated either the Constitution of the United States or the Constitution of the Commonwealth of Pennsylvania, the firearm was not the fruit of that pre-consent search, nor did the pre-consent search unduly coerce Ms. Moore into consenting. Ms. Moore did not claim her consent was involuntary.

We therefore dismiss McBride's first issue as meritless.

B.    *McBride Failed to Preserve His Second Claim of Error.*

Next, McBride challenges the post-consent search, because, in his view, the police exceeded the permissible scope of Ms. Moore's consent. He argues

that Ms. Moore's consent to search her apartment did not include consent to search the backyard.

The trial court indicates that McBride did not raise this issue at the suppression hearing. Trial Court Opinion, 1/22/19, at 7, n 5. Our review of the record confirms this procedural error. *See* McBride's Motion to Suppress at 4-5 (alleging police searched the apartment without consent but ***not*** asserting that, if consent was properly obtained, the officers exceeded the scope of that consent); ***see also*** N.T., 4/23/18, at 39-41.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pennsylvania Rule of Appellate Procedure 302(a). Because McBride first raised his argument that the police exceeded the scope of Ms. Moore's consent in his 1925(b) Statement of Matters Complained of on Appeal, he deprived the suppression court of an opportunity to rule upon this issue in the first instance.

We dismiss McBride's second claim of error as waived.[2]

Judgment of sentence affirmed.

_____

[2] Because neither of McBride's claims of unconstitutional conduct by the police warrant him any relief, we need not – and therefore do not – address the issue of whether the trial court erred by concluding that he had no expectation of privacy in Ms. Moore's residence. Even if he had a reasonable expectation of privacy, suppression of the evidence would not result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/18/2019