J-S52023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID LEE CHRISTY | |
| Appellant | No. 92 WDA 2015 |

Appeal from the Order Dated December 11, 2014
In the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0000309-2014

BEFORE:  SHOGAN, OLSON and WECHT, JJ.

MEMORANDUM BY OLSON, J.                    **FILED OCTOBER 15, 2015**

Appellant, David Lee Christy, appeals from the order dated December 11, 2014, denying his omnibus pretrial motion to suppress evidence.  Upon review, we are constrained to reverse and vacate his convictions.

The trial court summarized the facts of this case, as presented at a suppression hearing held on July 11, 2014, as follows:

> While on patrol with Officer Robert Martz during the early morning of January 21, 2014, Officer [Frank] Davis [of the Slippery Rock Police Department] was in a stationary position in his police vehicle off of Harmony Road across from Slippery Rock University.  From that position Officer Davis was able to see the intersection of Stadium Drive and North Road.  At one point, at approximately 1:30 [a.m.], Officer Davi[s] saw a pickup truck sitting at the intersection with its headlights on for between five and ten minutes. The officers then approached the truck and pulled up beside it.  At that point, the truck drove away and made a right turn onto Harmony Road.  Officer Davis and Officer Martz continued on their patrol.

Approximately ten minutes later the officers were on Rock Pride Drive when they saw the same pickup truck sitting in the middle of the road. The officers pulled behind the pickup truck. As they were doing so, the truck began to drive off. The officers activated their overhead lights and conducted a stop of the truck. The officers reported the stop at 1:54 [a.m.] The stop was not based on a suspicion that the operator of the vehicle had violated any provision of the Motor Vehicle Code, according to the testimony of Officer Davis. Officer Davis, according to his testimony, had not observed a traffic violation. The stop was conducted solely to determine if the driver was lost or in need of assistance, Officer Davis testified. The driver of the truck, identified in the course of the stop as [Appellant], was not free to leave once the overhead lights were activated, Officer Davis testified. The truck was located on the campus of Slippery Rock University both times it was observed in the stationary position. There was no traffic in either areas where the truck was observed that would have caused it to stop, Officer Davis testified. Officer Davis testified that he believed the students of Slippery Rock University were still on holiday break at the time of the incident, though he could not be sure that was the case. While the areas where the truck was observed to be stopped were not typically areas where vehicles park, the truck did not impede traffic, Officer Davis testified.

Trial Court Opinion, 10/21/2014, at 1-2.

Appellant was arrested on suspicion of driving under the influence of alcohol (DUI). The Commonwealth charged Appellant with DUI general impairment, DUI high rate of alcohol, and restrictions on alcoholic beverages.[1] On May 8, 2014, Appellant filed an omnibus pretrial motion arguing that the traffic stop was illegal because police lacked reasonable suspicion or probable cause to believe that criminal activity was afoot. The

---

[1] 75 Pa.C.S.A. §§ 3802(a), 3802(b), and 3809, respectively.

- 2 -

trial court held a suppression hearing on July 11, 2014 wherein Officer Davis testified. At the conclusion of the hearing, the trial court requested legal briefs from both parties concerning the duties of campus police. Both parties complied. On October 14, 2014, the trial court entered an order, and filed an accompanying opinion, denying Appellant's pretrial motion to suppress. On November 14, 2014, following a bench trial, the trial court found Appellant guilty of the aforementioned charges. On December 11, 2014, the trial court sentenced Appellant to six months of intermediate punishment, the first thirty days on house arrest, fifty hours of community services, and a $750.00 fine. This timely appeal resulted.[2]

On appeal, Appellant presents the following issue for our review:

> Did the [t]rial [c]ourt commit an error of law when it denied [] Appellant's [o]mnibus [p]re-[t]rial [m]otion to [s]uppress and concluded that Officer Frank Davis, of the Slippery Rock University Police Department, had a reasonable basis for stopping [] Appellant's vehicle, and that said traffic stop was not in violation of Article One Section Eight of the Constitution of the Commonwealth of Pennsylvania and the Fourth and Fourteenth Amendments to the United States Constitution[?]

Appellant's Brief at 4.

_____

[2] Appellant filed a notice of appeal on January 8, 2015. On January 12, 2015, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on February 2, 2015. On February 9, 2015, the trial court filed an order under Pa.R.A.P. 1925(a) stating that it was relying on its prior opinion entered on October 14, 2014, as justification for denying suppression.

Appellant claims that police lacked reasonable suspicion or probable cause to stop him and, thus, suppression was warranted. In sum, he argues:

> [I]t is clear that the interaction between Officer Davis and [Appellant] is not a mere encounter. Officer Davis did not just approach [Appellant] to speak to him; instead he activated his emergency lights and stopped [Appellant's] vehicle. It is clear that this progressed past a mere encounter because the [o]fficer clearly stated that [Appellant] was not free to continue on his way. If [Appellant] would have attempted to leave without speaking to the [o]fficer, he would have been pursued. The [t]rial [c]ourt specifically determined that initial interaction between Officer Davis and [Appellant] was not a mere encounter. However, the trial court's determination that [Appellant] was not [the] subject of an improper detention is unfounded.
>
> [] Officer Davis testified there were no vehicle code violations that were the basis of the traffic stop. Furthermore, there were no outward signs of distress from [Appellant's] vehicle that would indicate he was in need of assistance. He was on Slippery Rock University property that is open to the public. His vehicle was not blocking traffic and when Officer Davis pulled up to him on two occasions he moved along not initiating contact with Officer Davis. If Officer Davis was truly seeking to offer assistance then there was no reason for him to activate his emergency lights. He did so to stop and investigate the vehicle. His words are prophetic when he stated that [Appellant] was not free to continue on his way once he activated his lights. This raised the interaction between [Appellant] and Officer Davis to an investigative detention that was not based on any type of reasonable suspicion.

*Id.* at 16.

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

Contacts between the police and citizenry fall within three general classifications:

The first level of interaction is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an 'investigative detention' must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or 'custodial detention' must be supported by probable cause.
Police must have reasonable suspicion that a person seized is engaged in unlawful activity before subjecting that person to an investigative detention.

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led

him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305-306 (Pa. Super. 2011) (internal citations and brackets omitted).

Our Supreme Court recently affirmed this Court's memorandum decision by *per curiam* order in *Commonwealth v. Barnes*, -- A.3d --, 2015 WL 5033572 (Pa. 2015) which examined a similar factual scenario and issue as presented herein. In *Barnes*, while on routine patrol at 3:00 a.m., police officers observed Barnes make a left turn, pull off the roadway near a car dealership, and shut her headlights off. The arresting officer testified that he thought the driver may be experiencing vehicular problems, but also thought it was suspicious that the vehicle pulled over near the car dealership. This Court determined that the encounter amounted to an investigative detention because the officer admitted that Barnes was not free to leave. Barnes also testified that upon activation of the police's overhead lights, she believed she was not free to go. Our Court determined that in such a scenario a reasonable person would not think she was free to leave. Thus, we determined that the use of overhead police lights constituted a seizure requiring reasonable suspicion that criminal activity was afoot. Because the officer in *Barnes* had only a particularized hunch that criminal activity was occurring, this Court affirmed the trial court's grant of

suppression.   Thereafter,  the  Pennsylvania  Supreme  Court  affirmed  our

Court's decision by *per curiam* order.

In this case, Officer Davis testified as follows:

> I told [my partner,] Officer  Martz [do] you see that truck
> sitting over there[?]  He's been there for sometime, and he
> said, yeah, I noticed it, too, and I said let's go over and see
> if it's lost, see what the deal is because it's not normal for a
> vehicle to sit that long at an intersection.  So, we pulled up
> beside it and as soon as we did, we didn't even get a
> chance to communicate with the driver.  The truck took off.
> Made  a  right  onto  North  Road  and  went  back  towards
> Harmony Road.  We didn't think anything of it.  We figured,
> okay, he found his way or whatever, everything's all right
> so we continued on our patrol.  It was again I didn't look at
> the  clock  or  anything.   I'm  just  guessing  it  was  probably
> another ten, probably another ten minutes after our initial
> contact  with  that  vehicle  we  were  on  another  road  on
> campus called Rock Pride Drive.  We were coming down it,
> and we see the pickup, exact same pickup truck just sitting
> there same thing in the middle of the road.  So, and I asked
> Officer Martz I said is that the same truck, and he said,
> yeah, I think it is, so I said, well, let's go see what's going
> on.  He's obviously lost or something is wrong.  So, again
> we went to pull up behind him.  As soon as he saw us, again
> he  started,  he  made  a  right-hand  turn  onto  it's  like  all
> stores, shop parking, it loops back onto Rock Pride Drive.
> He made a  right-hand turn into that and at that point that's
> when I turned on the lights, and approached him just to ask
> if he was all right, if he needed directions, and that's when I
> came into contact with [Appellant].

N.T., 7/11/2014, at 5-6.

When asked why Officer Davis initiated the traffic stop, he responded:

> Just to see if he was lost, if everything was okay, because
> this was the second time in under half an hour that he was
> stopped in the roadway, you know, for an extended period
> of time just sitting there.  So, I was making an inquiry to

see if he needed any type of help, if he needed directions, whatever, you know.

*Id.* at 6-7.

Officer Davis further testified that he did not observe Appellant commit any traffic violations. *Id.* at 8, 12-13. He had no reason to believe Appellant was involved in criminal activity. *Id.* at 13. Officer Davis stated that once he activated the overhead police emergency lights, Appellant was not free to leave. *Id.* at 13. In fact, Officer Davis would have pursued Appellant if he had not stopped. *Id.*

In light of **Barnes** were are compelled to find that the interaction between the police and Appellant constituted a seizure requiring reasonable suspicion. Appellant moved his car twice when police approached in their marked vehicle and stopped only after they activated their overhead lights. A reasonable person in Appellant's position would not have felt free to leave. Thus, Officer Davis' interaction with Appellant constituted an investigatory detention. As previously stated, Officer Davis did not witness any motor vehicle code violations. Further, he did not point to any specific observations that would have led him to reasonably believe that criminal activity was afoot. As such, police did not have reasonable suspicion to support the traffic stop. Hence, suppression was warranted. Accordingly, we reverse the trial court's denial of suppression and vacate Appellant's convictions.

Order reversed. Judgment of sentence vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/15/2015</u>