**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Curtis JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 16, 2007.

Filed June 14, 2007.

Reargument Denied Aug. 23, 2007.

Kathleen E. Martin, Philadelphia, for appellant.

George M. Green, Asst. Dist. Atty., Media, for Com., appellee.

BEFORE: JOYCE, KELLY and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This is an appeal from the judgment of sentence imposed following Appellant's

---

* Retired Senior Judge assigned to the Superior Court.

convictions of murder in the first degree and robbery. Appellant raises three issues related to the denial of his motion to suppress: (1) whether the court erred in failing to suppress Appellant's April 16, 2002, statement taken by police and the subsequent fruits thereof in violation of Article I, § 9 of the Pennsylvania Constitution and the Fifth and Sixth Amendments to the United States Constitution; (2) whether the court erred in failing to suppress physical evidence and other evidence that was the fruit thereof seized by police pursuant to a search warrant signed on April 15, 2002, in violation of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution; and (3) whether the court erred by failing to suppress physical evidence including, but not limited to, clothing belonging to Appellant seized in a search of Appellant's residence pursuant to the April 15, 2002, search warrant which was not identified as items to be searched for and seized in the warrant and for which there is no legal exception in violation of the Pennsylvania rules of court, Article I, § 8 of the Pennsylvania Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. We affirm in part, reverse in part, and remand for a new trial.

¶ 2 We view Appellant's claims with the following consideration:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Jackson,* 907 A.2d 540, 542 (Pa.Super.2006).

¶ 3 This case involves the shooting death of the victim in the area of the Widener University campus in Chester, Pennsylvania in the early hours of April 15, 2002. Appellant and the victim were freshman roommates at Widener University. Prior to trial, Appellant filed a motion to suppress statements and physical evidence which the court subsequently denied. Thereafter, following a jury trial, Appellant was found guilty of murder in the first degree and robbery. Appellant was sentenced on the above convictions. This timely appeal followed. The lower court ordered Appellant to file a Pa.R.A.P. 1925(b) statement; Appellant filed a timely statement which included the issues raised on appeal.

¶ 4 First, Appellant claims that statements obtained from him by Detective Nuttall on April 16, 2002, should have been suppressed as they were obtained during a custodial interrogation and Appellant was not given warnings pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant was interviewed by Detective Nuttall on April 16, 2002, at approximately 6 p.m. At the time of the interview, Officer Nuttall was aware that Appellant had given a statement to the police the previous day, April 15, 2002, indicating that he had been at his dorm room that he shared with the victim on the evening of April 14, 2002, with the victim and several other individuals, that the victim left the room after the other individuals left, that that was the last time Appellant had seen the victim, and

Appellant did not know of the victim's whereabouts.

¶ 5 On April 16, 2002, Detective Nuttall contacted Widener University's security department and arranged to speak with all of the individuals who were with the victim the night he disappeared either by having the individuals come to the police station or by the detective going to the university campus. Because Appellant did not have a car, Gary Stulznick from Widener University drove Appellant to the police station. Appellant was interviewed in the detective interview room, a room approximately ten feet by twenty feet with a wall of windows facing the street, the same room in which the other individuals were interviewed. Detective Graves, one of the detectives who interviewed Appellant the previous day, was also present for the interview of Appellant as well as Detective Rodriguez who was in and out of the room during the interview. Detective Nuttall testified that during this time Appellant was not in custody and was free to leave. According to Detective Nuttall, Appellant did not indicate any desire to have a lawyer present or indicate that he no longer wanted to speak to Detective Nuttall or that he wanted to leave. On April 16, 2002, Appellant provided statements contradicting the statements he gave to the police the previous day. The interview ended with Appellant agreeing to take a polygraph test which was subsequently administered by a different detective.

■■■ ¶ 6 It is well established that *Miranda* warnings are required only where there is custodial interrogation. *Commonwealth v. Smith*, 575 Pa. 203, 836 A.2d 5, 18 (2003). A custodial interrogation occurs when a person is physically deprived of their freedom in any significant way or is placed in a situation in which they reasonably believe their freedom of action or movement is restricted by the interroga-

tion. *Commonwealth v. Eichinger*, 915 A.2d 1122, 1134–35 (Pa.2007). The test to determine custodial interrogation does not depend upon the subjective intent of the interrogator, but rather the reasonable belief of the individual being interrogated that their freedom of action is being restricted. *Commonwealth v. Williams*, 539 Pa. 61, 650 A.2d 420, 427 (1994). Thus, the fact that the interrogator subjectively believes that the individual being interviewed is a suspect is irrelevant to the question of custody, if the officer has not communicated the fact to the individual. *Smith*, 836 A.2d at 18.

¶ 7 Applying these principles to the facts of this case, we conclude that at the time Appellant made the contradictory statements to Detective Nuttall he was not in custody and, thus, was not required to have *Miranda* warnings administered to him. The record indicates Appellant voluntarily came to the police station at the request of the police who asked to speak with everyone who was with the victim the evening of April 14, 2002. Appellant was driven to the police station by an employee of Widener University because he did not have a car. During the interview with Detective Nuttall, Appellant did not indicate that he wanted a lawyer, that he no longer wanted to talk to Detective Nuttall, or that he wanted to leave. Additionally, there is nothing to indicate that Appellant was treated in the interview any differently than the other four individuals who were interviewed. It is clear from the record that the detectives did not place Appellant in a situation where he could have reasonably believed that his freedom of movement was restricted.

¶ 8 Thus, we agree with the conclusion of the lower court that:

[A]ll of Appellant's statements provided on April 16th were voluntary[ily] given and were provided to the police free

from inducement or coercion. There was no reason for Detective Nuttall to provide the *Miranda* warnings to Appellant. Appellant was not considered a suspect on April 16th around 6:00 p.m. Detective Nuttall had no reason to believe any statement that Appellant provided would or could be considered incriminatory in nature; he was merely trying to gather evidence as to [v]ictim's whereabouts prior to the murder.

Trial Court Opinion, 6/6/06, at 21–22.

¶ 9 Appellant asserts that even if he had not become a suspect in the homicide, after he made the contradictory statements on April 16, 2002, Appellant had become a suspect on a charge for false statements to police and, therefore, the interrogation should have been stopped for the purpose of providing him with *Miranda* warnings. However, as stated above, under Pennsylvania law, the subjective belief of the interrogator that the individual being interviewed is a suspect is irrelevant to the question of custody if the detective has not communicated the belief to the individual. Appellant does not assert that the detective communicated to him that he was a suspect on a charge for false statements. As we have already concluded, any belief by Appellant that his freedom of action was being restricted at the time that he made the contradictory statements would not be reasonable, thus, Appellant was not subjected to custodial interrogation at that time and *Miranda* warnings were not required.

¶ 10 Appellant further argues that the subsequent statement to the polygraph examiner should have been suppressed as fruit of the unlawful interrogation of Appellant. As we have already determined, Appellant's April 16, 2002, statements to Detective Nuttall were not obtained pursuant to a custodial interrogation for which *Miranda* warnings were required and,

thus, the court correctly concluded that they were not subject to suppression. Accordingly, the subsequent statement to the polygraph examiner is not fruit of an unlawful interrogation as Appellant asserts and the lower court correctly found that this statement was also not subject to suppression.

¶ 11 Appellant's second and third issues relate to the search of Appellant's and the victim's dorm room and the seizure of items from that room. Appellant contends that the search warrant obtained by police was not supported by probable cause and, therefore, the physical evidence taken from the room was seized illegally and should have been suppressed. The lower court determined that there was probable cause upon which the district justice could have issued the search warrant and that any evidence seized pursuant to the search was not subject to suppression. For the following reasons, we find that the lower court erred in this determination.

¶ 12 Appellant asserts that the search and seizure at issue in this case violated both the Pennsylvania Constitution and the United States Constitution. Initially, we note that our courts have held that the standard for evaluating whether probable cause exists for the issuance of a search warrant is the same under both the Fourth Amendment of the United States Constitution and Article I, § 8 of the Pennsylvania Constitution. *Commonwealth v. Glass*, 562 Pa. 187, 754 A.2d 655, 661 (2000). In *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985), the Pennsylvania Supreme Court specifically adopted the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in determining whether probable cause exists for issuing a warrant. *Commonwealth v. Murphy*, 916 A.2d 679, 681–82 (Pa.Super.2007). Pursuant to this standard

"[T]he task of the issuing authority is to make a practical, common sense assessment whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Murphy*, 916 A.2d at 682. Further, "A magistrate's finding of probable cause 'must be based on facts described within the four corners of the affidavit[,]' and 'our scope of review of a suppression court's ruling [on a magistrate's finding of probable cause] is confined primarily to questions of law.'" *Commonwealth v. Smith*, 784 A.2d 182, 185 (Pa.Super.2001) (internal citations omitted).

¶ 13 Here the affidavit of probable cause for the search warrant stated as follows:

> On 2/19/2001[1] Officer Gizzi responded to the area of the 100[0] blk of East 18th St. for a call of shots fired. Upon arrival the officer was advised by witnesses that the shots were coming from the end of the street, Officer Gizzi then went to the end of the [s]treet and discovered a B/M wearing a black shirt and black jeans shorts laying on his back in a pool of blood with what appeared to be gunshot wounds to the head, the victim was unresponsive and not breathing. Paramedics announced the victim deceased at 0216 Hrs.

> Det. Hampel discovered keys on the victim[']s body that belonged to Widener University, [u]pon checking with Widener Security it was found that the victim may have been a [W]idener student, a picture was given to police by Widener Security and was compared to the victim that was discovered on the 1000 blk of East 18th Street, and found that the victim and the picture provided to police were identical.

> With the information provided [p]olice believe that the victim is Abdul Sesay B/M/20 who resides [sic] Widener University Campus at Phayer Hall Room # 306[.]

Affidavit of Probable Cause, 4/15/02, at 1.

¶ 14 The application for the search warrant seeks "Any evidence that provides Identification/Cellular Phones, Pagers, Drugs, Drug Paraphanalia [sic], handguns, bullets." Application for Search Warrant, 4/15/02, at 1. Essentially, the affidavit only establishes that the police discovered the victim of an apparent shooting homicide, identified as Abdul Sesay, a Widener University student who resided in a dorm room on campus. As Appellant points out, the affidavit contains no explanation as to why police would expect to find the evidence listed in the warrant in the victim's dormitory room. Nothing in the affidavit states that the victim's death was drug-

---

1. We are aware that the affidavit of probable cause erroneously stated that the criminal act occurred on 2/19/2001, when, in fact, the crime occurred on April 15, 2002, and of Appellant's argument that the warrant lacked probable cause on this basis. The lower court found that although the search warrant contained an error regarding the date of the incident, that error was not fatal to the search warrant. We note that the application for the search warrant indicates the correct date of the criminal act, the district justice who issued the warrant reviewed both the application and the affidavit, and the affidavit contained specific details of the crime. Thus, we do not believe that this technical error results in a finding that the warrant is invalid. *See Commonwealth v. Washington*, 858 A.2d 1255, 1257–58 (Pa.Super.2004) (holding that search warrant executed was valid where despite the technically inaccurate address listed on the warrant, there was no ambiguity about where the criminal activity occurred and no question that probable cause existed to search that location where police had been there previously to make two controlled buys of narcotics; the particularity requirement of Pa. R.Crim.P. 206 was not violated). Instead, as will be discussed later, our finding that the warrant in this case lacked probable cause is based on other reasons.

related, yet some of the evidence sought clearly is so related. Because the affidavit gives no indication that contraband or evidence of a crime will be found in the victim's dorm room blocks away from the crime scene, it is not supported by probable cause.

¶ 15 Moreover, although identification evidence belonging to Abdul Sesay would arguably logically be found in his room, it is clear from the warrant that police had already identified the victim as Abdul Sesay, thus, there was no reason to search for additional identification evidence, certainly there was no stated reason. As such, there is no probable cause to support the issuance of the search warrant for identification purposes.

¶ 16 For these reasons, the issuing authority had no basis upon which to authorize the search of Appellant's and the victim's dorm room and the lower court erred in determining that the warrant was supported by probable cause and failing to suppress the evidence seized from the room.

■■ ¶ 17 The lower court further found that even if the search warrant was determined to be invalid, the evidence seized from Appellant's room still would not have been subject to suppression as the detectives obtained valid consent from Appellant to search his dorm room. The Commonwealth makes a cursory argument to the same effect. However, the consent form signed by Appellant giving police permission to search his room was not obtained from Appellant until after the detectives had searched his room and seized the items Appellant sought to suppress.[2] We do not find that subsequent consent can operate to validate a completed illegal search and seizure.[3]

■■ ¶ 18 The lower court also found that the evidence seized would not have been subject to suppression as the detectives would have inevitably discovered the evidence which Appellant sought to suppress as Appellant and the victim were roommates and the dorm room was a vital part of the ongoing investigation of the homicide. We find the lower court's conclusory statement is not a sufficient basis upon which to justify the court's failure to suppress evidence seized pursuant to the illegal search. The lower court cites to no authority which would support this theory. We note Pennsylvania courts recognize the inevitable discovery doctrine which provides that "evidence which would have

---

2. The record from the suppression hearing establishes that the search warrant was executed on April 15, 2002, and April 16, 2002; the consent to search was signed by Appellant on April 16, 2002, at 11:35 p.m. In fact, counsel for the Commonwealth conceded at the suppression hearing that the detectives searched Appellant's room and seized items, including Appellant's clothing, on April 15, 2002. N.T., 1/29/04, at 43–44; N.T., 5/7/04, at 92–93. This seizure occurred prior to Appellant signing the consent to search form.

3. Neither the Commonwealth or the lower court cite to any authority for the proposition that a subsequent consent to search can validate an initial illegal search, nor have we uncovered any support for such a finding. Instead, although not binding on this Court,

we find persuasive certain federal court decisions that have found no justification for an earlier unlawful search based upon a later consent to a search. *See United States v. Melendez–Gonzalez,* 727 F.2d 407, 414 (5th Cir.1984) (concluding that "There is no authority, however, which justifies an earlier illegal search based upon a later consent to an additional search."); *United States v. Carson,* 793 F.2d 1141, 1153 (10th Cir.1986) (stating "We agree that voluntary consent to search given after an illegal search, does not transform the prior illegal search into a legal one."). Additionally, because we do not agree that the consent in this case justifies the search and seizure at issue, we need not address the validity of Appellant's consent.

been discovered was sufficiently purged of the original illegality to allow admission of the evidence." *Commonwealth v. Ingram,* 814 A.2d 264, 272 (Pa.Super.2002). However, implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality. This is not the case with the evidence at issue here. We do not agree that merely because Appellant and the victim were roommates and the dorm room was allegedly a vital part of the ongoing investigation the evidence seized from the room on April 15, 2002, would have inevitably been discovered by detectives. Appellant was not in custody while the illegal search was being conducted and, but for the detectives being in his room unlawfully, Appellant would likely have had access to his room prior to consenting to a search or prior to being taken into custody. Thus, evidence illegally seized from Appellant's room may not have been available to police at a time when a lawful search may have been conducted.

¶ 19 Lastly, we note that because we are reversing the lower court's determination that the warrant was valid and that the evidence seized as a result of the search of Appellant's dorm room was not subject to suppression, we need not address Appellant's claim that the seizure of evidence from his room, particularly Appellant's clothing, was improper on the basis that the evidence was not identified as items to be searched for and seized in the warrant.

¶ 20 For the above reasons, we affirm the lower court's denial of Appellant's motion to suppress Appellant's April 16, 2002, statements. However, we reverse the lower court's denial of Appellant's motion to suppress evidence seized pursuant to the search warrant issued on April 15, 2002, and remand for a new trial.

¶ 21 Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.