J-S28038-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMAVILES MARTINEZ JR. | : | |
| | : | |
| Appellant | : | No. 252 MDA 2020 |

Appeal from the PCRA Order Entered January 29, 2020
in the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0000907-2014

BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 26, 2020**

Amaviles Martinez, Jr. ("Martinez"), appeals from the Order denying his Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

In its Opinion, the PCRA court detailed the factual and procedural history underlying the instant appeal, which we adopt as though fully set forth

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

herein.[2]  **See** PCRA Court Opinion, 1/28/20, at 1-7.  Following a hearing, the

PCRA court denied Martinez's PCRA Petition.  Martinez filed a timely Notice of

Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors

complained of on appeal.

On appeal, Martinez raises the following issue for our review:

A. Whether the PCRA [c]ourt erred in denying [Martinez's] Petition
for [r]elief under the [PCRA] for a claim of ineffective assistance
of counsel for failing to file a motion to suppress evidence[,] as
[Martinez] established the claim is of arguable merit and
[Martinez] established that counsel's strategy for failing to file a
motion to suppress was unreasonable?

Brief for Appellant at 4.

Our standard of review of a PCRA court's denial of a petition
for post[-]conviction relief is well-settled:  We must examine
whether the record supports the PCRA court's determination, and
whether the PCRA court's determination is free of legal error.  The
PCRA court's findings will not be disturbed unless there is no
support for the findings in the certified record.

_____

[2] We note that Martinez was represented by two different trial counsel. Relevantly, Martinez's first counsel, Emily Cherniak, Esquire ("Attorney Cherniak"), filed a Motion for extension of time to file an omnibus pre-trial motion on April 10, 2014.  The trial court granted an extension of time, and directed Attorney Cherniak to file such motion by May 16, 2014.  Attorney Cherniak did not file an omnibus pre-trial motion before that date.  In fact, the docket reveals no other filings by Attorney Cherniak, and it is unclear whether she withdrew her appearance.  On September 26, 2016, Michael Farrell, Esquire ("Attorney Farrell"), entered his appearance on behalf of Martinez.  Attorney Farrell filed an Omnibus Pre-Trial Motion on October 24, 2016, challenging the legality of the search, and seeking to suppress the physical evidence obtained as a result of the search.  The trial court denied the Motion, citing the May 16, 2014 deadline it had set following Attorney Cherniak's Motion for extension of time.  On March 13, 2017, Attorney Farrell filed a Motion for reconsideration of the court's Order, which had denied the Omnibus Pre-Trial Motion and the Motion for leave to file an amended pre-trial motion to suppress.  The trial court denied the Motion.

***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted).

Martinez claims that Attorney Cherniak was ineffective for failing to file a motion to suppress the physical evidence (*i.e.*, a firearm and 3 pounds of marijuana) seized by his probation officers, Carlo DeAngelo ("Officer DeAngelo") and Michael Futrick, during a routine visit. ***See id.*** at 10-14. Martinez argues that he did not give Officer DeAngelo his consent to proceed to, and search, the third floor of his home. ***Id.*** at 11-12. According to Martinez, Officer DeAngelo detained him after finding a knife and a small amount of marijuana, and then threatened to arrest Martinez's wife if he found any additional contraband. ***Id.*** at 12. Martinez alleges that Officer DeAngelo lacked reasonable suspicion to conduct a search. ***Id.*** at 13. Further, Martinez asserts that he was subjected to an unlawful interrogation by Officer DeAngelo and law enforcement officers, "at which time he made statements which lead [*sic*] to the recovery of the evidence used against him at trial." ***Id.*** at 13. Martinez argues that Attorney Cherniak's failure to file a suppression motion could not be the result of a rational, strategic or tactical decision. ***Id.*** at 14-15. According to Martinez, Attorney Cherniak ignored his wishes solely because Martinez had chosen to cooperate with law enforcement. ***Id.*** at 15.

In its Opinion, the PCRA court set forth the relevant law concerning ineffective assistance of counsel claims and the rights of probationers, addressed Martinez's claim, and concluded that it lacks merit. ***See*** PCRA Court

Opinion, 1/28/20, at 8-13. First, the PCRA court concluded that Martinez's underlying claim lacks merit because the probation officers' walk-through visit did not constitute a search; Martinez's challenge to the validity of the search waiver is of no moment, because the officers' observation of the drugs and knife provided reasonable suspicion to conduct a search;[3] and reasonable suspicion would have led to the inevitable discovery of the remaining evidence, regardless of any statements made by Martinez. *See id.* at 9-12. Further, the PCRA court concluded that Attorney Cherniak had a reasonable basis for not filing a suppression motion, because Martinez had sought to cooperate with the Commonwealth in the hope of a more favorable outcome, and she believed that strategy would be compromised if Martinez challenged the evidence. *See id.* at 12-13. The PCRA court's factual determinations are supported by the record, and its legal conclusions are sound. *See Commonwealth v. Parker*, 152 A.3d 309, 322 (Pa. Super. 2016) (concluding that probation officers' walk-through visit of the offender's residence did not constitute a search, where the purpose of their presence was to "verify his compliance with the terms and conditions of his probation[,]"

---

[3] *See* 42 Pa.C.S.A. § 9912(d)(1) (permitting a personal search of an offender "if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision[.]"), (2) (permitting a search of an offender's property "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.").

and the officers' observations of drug paraphernalia and a firearm in plain view provided reasonable suspicion for a subsequent search); ***Commonwealth v. Smith***, 85 A.3d 530, 536-37 (Pa. Super. 2014) (concluding that a "state parole agent's actions in walking through [a]ppellant's residence did not constitute a search[,]" and the smell of marijuana during the lawful walk-through subsequently provided reasonable suspicion to conduct a search); ***see also*** 42 Pa.C.S.A. § 9912(a) (explaining that the purpose of the supervisory relationship between probation officers and offenders "is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public."). Therefore, we affirm on the basis of the PCRA court's Opinion as to Martinez's sole claim on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/26/2020

- 5 -

COMMONWEALTH OF PENNSYLVANIA  :  **IN THE COURT OF**
                            :  **COMMON PLEAS OF BERKS**
                            :  **COUNTY, PENNSYLVANIA**
        **v.**                 :  **CRIMINAL DIVISION**
                            :
                            :  **No. CP-06-CR-0000907-2014**
**AMAVILES MARTINEZ,**     :
        **Defendant**         :  **PAUL M. YATRON, JUDGE**

<u>NOTICE OF INTENTION TO DISMISS</u>                    **JANUARY 28, 2020**

Before the court is Defendant's Petition for Post Conviction Relief. For the reasons set forth herein, the Petition is denied.

## FACTUAL BACKGROUND

On February 6, 2014, Berks County Probation Officers Carlo DeAngelo ("PO DeAngelo") and Michael Futrich ("PO Futrick"), carried out a random, routine visit to the registered residence of Petitioner, Amaviles Martinez, who was on probation from an earlier offense. (Notes of Testimony of June 7, 2017 Jury Trial "Jury Trial N.T." at 62-63). PO DeAngelo had been supervising Petitioner for approximately two to three years prior to that time. (Jury Trial N.T. 60). When the officers arrived at Petitioner's residence, Petitioner let the officers inside the residence and the officers engaged in a conversation with Petitioner in the first-floor living room. (Notes of Testimony from July 26, 2017 Bench Trial "Bench Trial N.T." at 8).

During the routine visit, the officers performed a walkthrough of Petitioner's residence in order to ensure compliance with the conditions of parole. (Jury Trial N.T. 63; Bench Trial N.T. 8). PO DeAngelo admitted that he had asked Petitioner to see his "man cave," located on the third floor of the residence, that earlier supervising officers of Petitioner had mentioned. (Bench Trial N.T. 19-20). Petitioner's bedroom was also located on the third floor of the residence. (Bench Trial N.T. 17, 21). When the officers and Petitioner arrived at Petitioner's bedroom, the door was closed. (Bench Trial N.T. 20-21). Upon opening the door, PO DeAngelo detected the odor of marijuana. (Bench Trial N.T. 8). PO DeAngelo also noticed that Petitioner's tone changed from being jovial and social to being nervous. (Jury Trial N.T. 64). PO DeAngelo addressed the marijuana odor with Petitioner who responded that his drug screens have been clean, which PO DeAngelo confirmed. (Bench Trial N.T. 8-9). PO DeAngelo then observed two small bags of

1

suspected marijuana, along with a folding knife, located on an end table in the bedroom. (Bench Trial N.T 9).

Upon PO DeAngelo's observation of the suspected marijuana and the knife, PO DeAngelo questioned Petitioner about the items and PO Futrick told Petitioner that he was going to search Petitioner for any contraband or weapons and asked Petitioner if he anything on him. (Bench Trial N.T. 10, 29). Petitioner told PO Futrick that he had approximately $1,000 in U.S. currency on him, which PO Futrick did find, but no drugs or weapons were found on Petitioner. *Id.* PO Futrick informed Petitioner that he would be placed in custody with handcuffs so that a search could be conducted. (Bench Trial N.T. 10, 30).

PO DeAngelo advised Petitioner that the probation officers were going to contact their supervisors in order to obtain permission to search the residence and asked Petitioner if there was anything else in the residence that the officers needed to be aware of, to which Petitioner informed PO DeAngelo that there was three pounds of marijuana in the living room and firearm in the residence. (Bench Trial N.T. 10). Petitioner told the officers the specific location of the marijuana in the living room and PO Futrick went downstairs to check the location. (Bench Trial N.T. 11). PO Futrick called his supervisor, informed of the situation and received permission to search the residence. (Bench Trial N.T. 30). PO Futrick proceeded downstairs to the living room where Petitioner had specifically indicated and found a box containing marijuana, as well as two other bags containing marijuana in the entertainment center. (Bench Trial N.T. 30-32).

PO DeAngelo notified the Reading Police Department of the contraband and the firearm at Petitioner's residence. (Jury Trial N.T. 64). Officer Chris Cortazzo of the Reading Police Department arrived soon thereafter and administered Petitioner's *Miranda*[1] rights. (Jury Trial N.T. 64). After Petitioner had been informed of his *Miranda* rights, the officers questioned Petitioner regarding the location of the firearm. (Jury Trial N.T. 66). Petitioner directed the officers to a locked room on the second floor of the residence. *Id.* Petitioner told the officers where the keys to the locked room were and also indicated the exact key to unlock the door. (Jury Trial N.T. 66-67). Once inside the room, Petitioner told PO DeAngelo that the firearm was located in the top dresser drawer and that the firearm was wrapped inside of a Giants hat. (Jury Trial N.T. 67). Upon

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

discovery of the firearm, PO DeAngelo then turned the scene over to the Reading Police Department. (Jury Trial N.T. 72).

Upon arrival, Officer Cortazzo accompanied PO DeAngelo and Petitioner to the locked room where the firearm was located. (Jury Trial N.T. 86-87). After the firearm was retrieved, Officer Cortazzo continued to question Petitioner regarding the firearm and contraband found at the residence. (Jury Trial N.T. 87-88). Petitioner told Officer Cortazzo that the firearm had belonged to someone else who left at Petitioner's previous residence and that Petitioner retained the firearm. (Jury Trial N.T. 88). Petitioner also stated that the items in question were his and did not belong to anyone else. *Id.*

## PROCEDURAL HISTORY

Defendant was charged with Possession With Intent to Deliver a Controlled Substance ("PWID")[2], Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms[3], Possession of Drug Paraphernalia[4] and Possession of a Controlled Substance[5]. On April 10, 2014, Petitioner, through his first trial counsel, Emily Cherniak, Esq., filed a Motion to for Extension of Time to File Omnibus Pretrial Motions, which this court granted by order dated April 15, 2014.

On September 23, 2016, J. Michael Farrell, Esq. entered his appearance on behalf of Petitioner. On October 24, 2016, Petitioner filed an Omnibus Pretrial Motion, which this court denied as untimely on October 26, 2016. Second Trial Counsel then filed a Motion for Reconsideration of our denial on December 20, 2016, which we denied. On March 13, 2017, Second Trial Counsel filed a second Motion for Reconsideration. On March 17, 2017, we again denied the motion.

On February 8, 2017, due to impending disciplinary action against Attorney Farrell, Patrick Duffy, Esq. entered his appearance on behalf of Petitioner. Thereafter, both the Commonwealth and Third Trial Counsel filed motions to sever Count 2, Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms from the other charges against Petitioner. The Commonwealth

---

[2] 35 P.S. § 780-113(a)(30)
[3] 18 Pa.C.S.A. § 6105(a)(1)
[4] 35 P.S. § 780-113(a)(32)
[5] 35 P.S. § 780-113(a)(16)

3

having filed its motion first in time, we granted the motion and Count 2 was then severed for separate trial.

A jury trial was held on June 7, 2017 on the firearms possession charge. At the conclusion of the jury trial, Petitioner was found guilty. On July 26, 2017, a bench trial was held before this court on the remaining charges, including the PWID, Possession of Drug Paraphernalia and the Possession of a Controlled Substance charges. At the conclusion of the bench trial, this court found Petitioner guilty of the remaining charges.

On July 31, 2017, this court sentenced Petitioner to an aggregate sentence of six to fifteen years incarceration in a State Correctional Facility, along with one-year probation. On August 4, 2017, Petitioner, through counsel, filed post-sentence motions, which were denied by order dated August 8, 2017. On August 28, 2017, Petitioner filed an appeal of the denial of the judgment of sentence to the Superior Court. The Superior Court affirmed Petitioner's judgment of sentence on August 14, 2018. No further appeal was thereafter taken.

On April 18, 2019, Petitioner, through counsel, timely filed the instant Petition for Relief Under the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq.* The Petition raises the allegation of ineffective assistance of Petitioner's various trial counsel in the following ways:

a. Attorney Cherniak rendered ineffective assistance in failing to challenge the legality of Petitioner's arrest and in not moving to suppress the physical evidence;

b. Attorney Duffy was ineffective for failing to ask and elicit testimony from Carlo DeAngelo and Christopher Cortazzo that the Petitioner informed both of them that the firearm located inside the residence was owned by [Petitioner'] wife, Gloria Martinez, and that she had brought the firearm into the residence and kept it under lock and key;

c. Attorney Duffy was ineffective for failing to communicate sufficiently with Petitioner during jury selection when Petitioner specifically informed counsel that he did not wasn't two of the jurors selected by counsel because the jurors['] responses in voir dire that went against the trial strategy regarding gun possession in the home;

4

(Def.'s Pet. ¶¶ 10-12). A hearing on the matter was held on August 21, 2019. During the hearing, Petitioner withdrew his second claim of ineffective assistance against Attorney Duffy for failure to elicit testimony from PO DeAngelo and Officer Cortazzo.

At the PCRA hearing, Defense counsel first called Petitioner who testified that he retained the services of Emily Cherniak, Esq. shortly after his arrest in February of 2014 and had conversations with Attorney Cherniak discussing the arrest and search of his residence. (Notes of Testimony of PCRA hearing on August 21, 2019 "PCRA N.T." at 4). During subsequent conversations with Attorney Cherniak, Petitioner stated that he asked Attorney Cherniak about strategy and moving forward with a suppression motion. (PCRA N.T. 6). At the same time, Petitioner and Attorney Cherniak were working on cooperation with the Commonwealth. *Id.* Petitioner stated that Attorney Cherniak failed to re-address the suppression issue and instead, focused on continued efforts to cooperate with the Commonwealth. *Id.* Petitioner was aware that Attorney Cherniak had requested, and was granted, an extension to file the suppression motion, but knew that no suppression motion had subsequently been filed. (PCRA N.T. 7).

Petitioner testified that he never agreed to allow PO DeAngelo to go upstairs to his bedroom or "man cave." (PCRA N.T. 5). Petitioner also stated that, after observing the marijuana and knife on the end table in his room, PO DeAngelo asked Petitioner if there was anything else in the house and told Petitioner that if the probation officers found "anything in the house that wasn't supposed to be there, that they were gonna arrest [Petitioner's] wife." (PCRA N.T. 5-6). Petitioner asserted that PO DeAngelo's threat prompted Petitioner to disclose the location of the firearm and admit that the firearm belonged to him. (PCRA N.T. 6).

Petitioner then decided to change counsel and retained Attorney Farrell, who, upon reviewing the discovery, filed a pretrial suppression motion. *Id.* Attorney Farrell proceeded to file several suppression motions and motions to reconsider. *Id.* After Attorney Farrell was convicted of money laundering and a drug operation, Petitioner then engaged the services of Attorney Farrell's law partner, Attorney Duffy. *Id.*

With Attorney Duffy, Petitioner's matter moved to trial. (PCRA N.T. 7-8). Petitioner testified that during jury selection, Attorney Duffy asked several questions, including a question regarding whether any of the potential jurors knew where their spouse kept a firearm in the house. (PCRA N.T. 8). Petitioner also stated that it was his understanding that he was allowed to pick at

5

least three jurors, but that Attorney Duffy never allowed Petitioner to pick any of the jurors. *Id.* After the jury panel had been picked, Petitioner informed Attorney Duffy that he was not comfortable with two of the jurors based on specific questions asked during voir dire, to which Petitioner stated that Attorney Duffy did not respond. (PCRA N.T. 8-9). Petitioner made no further objection and could not remember having any further discussion with Attorney Duffy regarding the issue. (PCRA N.T. 9-10).

On cross-examination, Petitioner admitted that he knew that a jury must make a unanimous finding of guilt in a criminal trial and conceded that the jury in his trial eventually did come to a guilty verdict unanimously. (PCRA N.T. 10-11). Additionally, Petitioner acknowledged that he did not object to the remaining jury members. (PCRA N.T. 11).

Petitioner also admitted that after being arrested following the home visit, he was held on a probation detainer that would keep him in jail and that part of the reason he was eventually released was because of Petitioner's willingness to cooperate with the Commonwealth, which was the result of Attorney Cherniak's strategy. (PCRA N.T. 12-14). However, Petitioner contended that Attorney Cherniak, though filing the initial extension to file, should have worked to preserve the right to file a suppression motion because cooperation does not always work out. (PCRA N.T. 14).

Attorney Cherniak testified that she was contacted and agreed to represent Petitioner in the underlying matter in 2014 and soon thereafter, met with Petitioner at the Berks County Prison and again at the Community Reentry Center. (PCRA N.T. 16). During discussions with Petitioner as to legal strategy, Attorney Cherniak stated that Petitioner was presented with a choice of either cooperating with the Commonwealth or pursuing litigation in the matter. (PCRA N.T. 18). Attorney Cherniak was eventually able to secure Petitioner's release from custody based on his cooperation with the Commonwealth. (PCRA N.T. 17). Attorney Cherniak testified that she did not believe that she could have pursued preservation of Petitioner's suppression motion based on her previous dealings with the district attorney's office. (PCRA N.T. 18). Petitioner had previously cooperated on other matters — both state and Federal — so Attorney Cherniak believed that Petitioner was aware of what cooperation entailed. *Id.*

Attorney Cherniak stated that Petitioner did present the issue of the suppression motion with her on several occasions, but that Petitioner continued to cooperate for almost two years and

that such a strategy was employed in hopes of obtaining a mitigated sentence. (PCRA N.T. 19). Attorney Cherniak's understanding was that Petitioner's wife was undergoing IVF at the time and Petitioner was seeking to be released in order to facilitate the treatment. (PCRA N.T. 19-20). The Commonwealth, indicating good faith efforts that cooperation with petitioner was moving forward, granted the release through lifting of the detainer on Petitioner. (PCRA N.T. 20). Attorney Cherniak testified that, in her experience as a defense attorney, a defendant can choose a strategy of cooperating with the Commonwealth in the hopes of a more favorable offer or sentence or in filing a motion to suppress that would challenge the basis of the charges, but not both. (PCRA N.T. 20-21). In the instant matter, Attorney Cherniak considered the options, weighed the likelihood of success of each option and ultimately employed the strategy of cooperation in order to facilitate Petitioner's wish to be released from custody. (PCRA N.T. 21-23).

Attorney Cherniak clarified that she also evaluated the potential success of a suppression motion and found that it did not have much chance for success. (PCRA N.T. 24). Attorney Cherniak likewise informed Petitioner of her assessment of the likelihood of success on a suppression motion. (PCRA N.T. 24-25).

Attorney Duffy testified that he took over representation of Petitioner because Attorney Farrell's legal issues prevented him from further representation. (PCRA N.T. 26). Attorney Duffy discussed trial strategy with Petitioner prior to jury selection, part of which included a discussion of the jury selection process and the type of juror that might be favorable to the facts and arguments of Petitioner's case. (PCRA N.T. 27). During voir dire, as is his general practice, Attorney Duffy stated that he would ask relevant questions of the potential jurors. (PCRA N.T. 28). Attorney Duffy testified that he remembered Petitioner being very involved in the jury selection, but did not recall the specific objections to which Petitioner testified. (PCRA N.T. 29-30). Attorney Duffy explained that he would describe the jury selection more as a de-selection process and that he does not remember informing Petitioner that he could pick three jurors and that it would be inconsistent with his practice. (PCRA N.T. 31-32). Attorney Duffy did remember that Petitioner knew one of the potential jurors, who worked at Comcast and played softball with Petitioner, that the Commonwealth asked and was granted to strike for cause. (PCRA N.T. 33). Another potential juror, a sheriff's deputy, though Attorney Duffy requested to strike for cause, that request was denied. (PCRA N.T. 28).

7

At the completion of the PCRA hearing, we ordered that the notes of testimony be transcribed and granted counsel thirty days from the lodging thereof within which to file memoranda in support of their respective positions. The Commonwealth filed its brief on September 25, 2019. Petitioner did not file any additional brief. The matter is thus before this court and ripe for disposition.

## DISCUSSION

Defendant asserts a claim that Attorneys Cherniak and Duffy were constitutionally deficient on several grounds. In the context of a petition for post-conviction relief, our Supreme Court has provided that:

> A PCRA petitioner will be granted relief on this ground only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 532 (2009); *Commonwealth v. Dennis*, 597 Pa. 159, 950 A.2d 945, 954 (2008). To obtain relief, a PCRA petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. Applying the *Strickland* performance and prejudice test, this Court has noted that a properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission. *Johnson*, 966 A.2d at 533; *Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 12 (2008) (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987) (adopting U.S. Supreme Court's holding in *Strickland* )).

*Commonwealth v. Smith*, 17 A.3d 873, 883 (Pa. 2011). Moreover, "in assessing claims of [ineffective assistance of counsel], the court's evaluation of counsel's performance must be highly deferential, its determination based not upon the distorting effects of hindsight, but upon a preponderance of the evidence in each of [the] three categories." *Commonwealth v. Chazin*, 873 A.2d 732, 735 (Pa.Super. 2005)(internal citations and quotation marks omitted). Further, "an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the

8

review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief." *Commonwealth v. Bracey*, 795 A.2d 935, 940 n. 4 (Pa. 2001).

I. *Claim Against Attorney Cherniak for Failure to File Suppression Motion*

Petitioner first claims that Attorney Cherniak rendered ineffective assistance by failing to challenge the legality of his arrest and in failing to file a motion to suppress the evidence. Based on the testimony at the PCRA hearing, Petitioner further contends that Attorney Cherniak was ineffective in failing to preserve his right to file the suppression motion as well.

Our first step in analyzing Petitioner's contention is to determine whether the underlying claim is of arguable merit[6]. Petitioner alleges in his Petition that" the probation officers arrived at the residence for a routine home check, not for a home search." (Def.'s Pet. ¶ 10). Therefore, Petitioner admits that the probation officers were there for a lawful purpose, namely for a routine home inspection. Moreover, our Superior Court has stated that probation officers performing a walkthrough visit to ensure compliance with a probationer's conditions of probation, consistent with their supervisory duties, does not constitute a search. *Commonwealth v. Smith*, 85 A.3d 530, 537 (Pa.Super. 2014).

> The aim of probation and parole is to rehabilitate and reintegrate a lawbreaker into society as a law-abiding citizen. *Commonwealth v. Chambers*, 55 A.3d 1208, 1212 (Pa.Super. 2012). The institution of probation and parole assumes a probationer or parolee is more likely than the ordinary citizen to violate the law. *Commonwealth v. Moore*, 805 A.2d 616, 619 (Pa.Super. 2002). Consequently, probationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy.

*Commonwealth v. Parker*, 152 A.3d 309, 316 (Pa.Super. 2016)

Petitioner proceeds to assert that "the probation officer unlawfully went upstairs in the residence, which ultimately resulted in the detection of the odor of marijuana." (Def.'s Pet. ¶ 10). Petitioner then alleges that the probation officers threatened to arrest his wife if any drugs were located at the residence and that this threat served as the basis for his consent to search the residence. *Id.*

---

[6] "Arguable merit exists when the factual statements are accurate and could establish cause for relief." *Commonwealth v. Barnett*, 121 A.3d 534, 540 (Pa.Super. 2015). Whether the facts rise to the level of arguable merit is a legal determination." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa.Super. 2013)

9

At the PCRA hearing, Petitioner testified that PO DeAngelo "started askin' me questions about enterin' my third-floor bedroom, which at this moment I asked him for what." (PCRA N.T. 5). Petitioner stated that PO DeAngelo responded that he wanted to see Petitioner's "man cave." *Id.* PO DeAngelo insisted, and Petitioner testified that "I never agreed, but they went up anyway." *Id.* Once the probation officers detected the odor of marijuana and PO DeAngelo spotted the suspected marijuana and knife on the end table, Petitioner testified that "they were askin' me if there were other drugs in the house," and that PO DeAngelo told me that if they find "anything in the house that wasn't supposed to be there, that they were gonna to arrest my wife." (PCRA N.T. 5-6).

We find that, based on the notes of testimony from the jury and bench trials, as well as from Petitioner's testimony from the PCRA hearing, the underlying claim lacks merit. The walk-through visit to ensure compliance with the conditions of probation does not constitute an unlawful search. Likewise, restricting such a walk-through only to those areas prescribed by the probationer himself would defeat the supervisory role to which the probation officer is charged. The fact that the probation officers proceeded to the third floor, where Petitioner's bedroom was located, does not convert the walkthrough into an unlawful search. Petitioner did not allege that the probation officers searched beyond what was in plain view upon entering the bedroom.

We note that Petitioner's claims in his Petition and from his testimony at the PCRA hearing seem to evince a difference in the nature of the claim. In the Petition, Petitioner alleges that "probation officers informed the Petitioner that his wife would be arrested if probation and/or Reading Police Officers located drugs inside the residence unless he provided consent to search the residence" and that "any consent to search the residence after the initial search by Adult Probation was coerced after threatening to arrest his wife." (Def.'s Pet. ¶ 10). At the PCRA hearing, Petitioner's testimony indicates that his statements disclosing the location and admitting ownership of the firearm were coerced by PO DeAngelo's alleged threats and no mention of the subsequent consent to search was mentioned.

We are reminded of a similar case emanating from this court. In *Commonwealth v. Tsopanis-Sellari*, 9 Pa. D. & C. 5th (C.P. Berks 2009) *aff'd per curiam* 4 A.3d 673 (Pa.Super. 2010)(memorandum decision), *appeal denied*, 20 A.3d 487 (Pa. 2011), the defendant was participating in an ARD program when probation officers visited his residence on a routine home

10

visit. While on the visit, the probation officers accompanied the defendant to his bedroom where one of the probation officers asked the defendant if they would search the room would they find anything the defendant was not supposed to have under the conditions of his ARD. The defendant then retrieved a bag of marijuana and gave it to the probation officers. The probation officers then placed the defendant in handcuffs and asked if there was anything else they needed to know about. The defendant, though initially silent, then responded that there was a shotgun underneath the couch in his bedroom. The probation officers then called the police who eventually took over the scene and obtained a search warrant, finding various other items, including the shotgun.

The defendant moved for suppression of the physical evidence and statements made regarding the shotgun and its location, under various grounds. The defendant challenged the probation officers' reasonable suspicion to initiate the search and seizure and sought suppression of his statements alleging that the statements were made pursuant to a custodial interrogation. The court denied the motion to suppress the physical evidence, finding that the probation officers were exercising due authority in the initial contact with the defendant to ensure compliance with conditions of ARD and that no search occurred. Moreover, the court found that the probation officers were possessed of reasonable suspicion based on the defendant's behavior. As to the suppression of the defendant's statements, the court found that no such custodial interrogation occurred. The defendant was handcuffed to ensure the probation officers' safety. Additionally, when the probation officer asked about anything else they should know about, the court found that such a question was not reasonably likely to elicit an incriminating response. The court further found that even if the statements were the result of a custodial interrogation, the remedy did not lie in suppression of the statements, as the doctrine of inevitable discovery applied and the subsequent search by police would have yielded the shotgun. The defendant appealed the court's ruling. The Superior Court affirmed the judgement of sentence in an unpublished memorandum opinion and the Supreme Court denied the defendant's Petition for Allowance of Appeal.

We find significant similarity between the matter *sub judice* and *Tsopanis-Sellari*. Our review of the record does not provide support Petitioner's allegations. Although Attorney Duffy questioned PO DeAngelo regarding the alleged threat on cross-examination, PO DeAngelo denied the threat and PO Futrick denied hearing any threat from PO DeAngelo. Moreover, the consent to search was unnecessary because the probation officers observed the drugs and knife in violation

11

of Petitioner's conditions of probation, which provided the reasonable suspicion basis for a search pursuant to 61 Pa.C.S.A. § 6153.

Whether Petitioner felt somehow compelled by any questions from PO DeAngelo to disclose the location of the firearm and admit ownership is not solely dispositive of the issue. It is well established that "Pennsylvania courts have also recognized the inevitable discovery doctrine." *Commonwealth v. Ingram*, 2002 PA Super 405, ¶ 19, 814 A.2d 264, 272 (Pa. Super. Ct. 2002). "Under the inevitable discovery exception to the exclusionary rule, the fact that challenged evidence was obtained as a result of illegal government conduct does not end the inquiry into whether the evidence was admissible at trial." *Commonwealth v. Gonzalez*, 979 A.2d 879, 890 (Pa.Super. 2009). The "doctrine provides that evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence." *Id.* (citing *Ingram*, *supra* at 272); *Commonwealth v. Hoffman*, 589 A.2d 737, 743 (Pa.Super. 1991) ("[I]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . the deterrence rationale [of suppression] has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense."). "[I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality." *Commonwealth v. Jones*, 928 A.2d 1054, 1061 (Pa.Super. 2007), *rev'd, on other grounds* 988 A.2d 649 (Pa. 2010).

It was established that the probation officers were going to conduct a search of the residence following discovery of the drugs and knife. Petitioner's disclosure of both the firearm and other drugs was unnecessary to the discovery of such evidence as a search would have yielded both the firearm and the drugs.

At the Bench Trial, Officer Adam Linderman of the Reading Police Department testified that he arrived on the scene and began interacting with Petitioner, at which time, Officer Linderman explained the search waiver, and then Petitioner agreed to sign the waiver. (Bench Trial N.T. 57-58). Given an objective view of the totality of the circumstances, we find that there is absolutely no nexus between alleged statements of PO DeAngelo and the search waiver Petitioner later executed with Officer Linderman.

Even were we to accept arguable merit as to Petitioner's claim, Petitioner fails to satisfy the second prong of the *Strickland/Pierce* test. At the PCRA hearing, Attorney Cherniak provided

12

a detailed account of the strategy employed in order to get Petitioner released from pretrial custody in order to participate in the IVF treatment, but also to further Petitioner's cooperation with the Commonwealth in hopes of a more favorable disposition. Clearly, there was an objective, reasonable basis for Attorney Cherniak's strategy. Additionally, Attorney Cherniak indicated that her own analysis of Petitioner's suppression claims were meritless and that she communicated this analysis to Petitioner.

Our Supreme Court has stated that "[w]ith regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011)(citation omitted). Consequently, "[w]e will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.*

Petitioner agreed with Attorney Cherniak that he was pursuing a strategy of cooperating with the Commonwealth and the outcome of such cooperation is the possibility of a more favorable disposition. We find Attorney Cherniak's testimony that her experience in facilitating such cooperation between her clients and the Commonwealth would be compromised if her client would contemporaneously seeks to preserve a right to challenge the evidence underlying the charges to be credible and that there was a reasonable basis for the chosen strategy. The fact that Petitioner is unhappy with the outcome of the strategy is not demonstrative of its deficiency. Therefore, we find that Petitioner has failed to satisfy his burden and this claim lacks merit.

II.  *Claim Against Attorney Duffy for Failure to Effectively Communicate with Petitioner During Voir Dire*

Petitioner next alleges that Attorney Duffy failed to effectively communicate with Petitioner. Petitioner alleges that he "specifically informed [Attorney Duffy] that he did not want two of the jurors selected by counsel because the jurors['] responses in voir dire that went against the trial strategy regarding gun possession in the home." (Def.'s Pet. ⁋ 12).

At the PCRA hearing, Petitioner testified that Attorney Duffy showed him the paperwork of the jury pool and remembers Attorney Duffy asking several questions regarding whether the potential juror knew where their spouse kept a firearm. Petitioner alleges that Attorney Duffy did

13

not explain the jury selection process to him and that he remained uninvolved in the process, asserting that it was "[Attorney Duffy] and the D.A. [that] actually picked the whole jury." (PCRA N.T. 8). Petitioner also explained that he did not know which jurors were bring picked and was not asked by Attorney Duffy to agree to the jurors that were picked.

Petitioner stated that after the jury had been seated, that he expressed to Attorney Duffy that there were two jurors that Petitioner was uncomfortable with. Petitioner then testified that after Attorney Duffy initially asked the question regarding firearms, and the two potential jurors did not stand up, that Petitioner told Attorney Duffy that the individuals would not be suitable for trial. On cross-examination, Petitioner could not recall the specific question, but indicated that the two individuals did not stand up because the question was inapplicable to them and that this served the basis for his objection.

On cross-examination, Petitioner admitted that a guilty verdict requires a unanimous jury decision and that he had no objection to the other members of the jury. Petitioner sought to support his claim by referencing the fact that the jury initially sent a note to the court indicating that they could not reach a verdict. However, approximately twenty minutes later, the jury announced that they had a verdict.

As noted above, Attorney Duffy testified that he recalled Petitioner being very involved in the jury selection process, including discussions about potential jurors. Attorney Duffy specifically remembered that Petitioner knew a member of the jury panel with whom he played softball. Attorney Duffy could not remember Petitioner making any specific objections and could not recollect why any specific individuals were not struck from the eventual jury, but opined that a strategy in the jury selection process recognizes that a defendant may end up with a more objectionable jury. Attorney Duffy further elaborated on cross-examination that the jury selection process involves weighing juror responses and other factors to determine which potential jurors might be more or less helpful and acting accordingly.

Given our review of the record, we find that Petitioner has failed to satisfy his burden in support of his claim. In order "[t]o establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: his underlying legal claim has arguable merit; counsel's actions lacked any reasonable basis; and counsel's actions prejudiced him," and the "[f]ailure to satisfy any prong of

14

the ineffectiveness test requires dismissal of the claim." *Commonwealth v. Urwin*, 219 A.3d 167, 172 (Pa.Super. 2019), *reargument denied* (Nov. 7, 2019).

We begin with the requirement that Attorney Duffy's actions prejudiced Petitioner. To establish sufficient prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009). In this matter, Petitioner has failed to demonstrate that he suffered any such prejudice from Attorney Duffy's alleged failure to strike two jurors to whom Petitioner objected. As was clear, both from the jury trial and from the PCRA hearing, Petitioner's conviction resulted from a unanimous jury verdict. In fact, at the conclusion of the jury trial, Attorney Duffy moved this court for the jury to be polled, and we granted the motion. All members of the jury answered that they agreed with the verdict. (Jury Trial N.T. 180-82).

Furthermore, we find that Attorney Duffy exhibited an objective, reasonable basis for the strategy employed at the jury trial. Attorney Duffy indicated that he interacted with Petitioner throughout the jury selection process and we find his testimony to be credible. Petitioner's testimony was inconsistent and, if believed, only objected to the two jurors after the jury had seated. Moreover, Petitioner failed to demonstrate how excluding the two jurors was more consistent with the trial strategy than allowing the jurors to sit. "It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness." *Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018). Petitioner has failed to demonstrate that Attorney Duffy's strategy and decisions, specifically as rlated to jury selection, fell "outside the wide range of professionally competent assistance." *See Strickland v. Washington*, 466 U.S. 668, 690 (1984).

Having found that Petitioner's arguments pursuant to his petition for post conviction relief lack merit, we deny the requested relief. Accordingly, we will enter an order consistent with the foregoing.

15