J-S08040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD KYLE EBERLIN | : | |
| | : | |
| Appellant | : | No. 822 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 2, 2023
In the Court of Common Pleas of Sullivan County Criminal Division at
No(s): CP-57-CR-0000027-2021

BEFORE: OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:     **FILED: APRIL 16, 2024**

Appellant, Richard Kyle Eberlin, appeals from the judgment of sentence entered in the Sullivan County Court of Common Pleas on May 2, 2023. We affirm.

The relevant facts and procedural history as summarized by the trial court are as follows:

> On or about September 20, 2021, a Criminal Information was filed against Defendant Richard Kyle Eberlin (hereinafter "Defendant") charging Defendant with the following: [one felony count of possession with intent to deliver methamphetamine, eight misdemeanor counts of drug paraphernalia, and four vehicle code violations].
> The charges against Defendant stem from an incident that occurred on July 15, 2021 in Davidson Township, Sullivan County, Pennsylvania. On that date at approximately 7:30 p.m. Defendant was operating a motor vehicle when he was stopped by officers from the Pennsylvania State Police for various Vehicle Code

---

[*] Former Justice specially assigned to the Superior Court.

violations. (H.T. 8/2/22, pp. 7-9). After the vehicle was stopped, Defendant was ordered to exit the vehicle and a pat-down search for weapons was conducted during which the officers found a box of cigarettes. (H.T. 8/2/22, pp. 24-25). Pennsylvania State Master Trooper Derrek Martin (hereinafter "Trooper Martin" had previously arrested individuals who purchased Methamphetamine from Defendant. (H.T. 8/2/22, pp. 20-21). Trooper Martin observed a bulky white vaporizer in the cupholder that could be used for things other than vaping nicotine. (H.T. 8/2/22, p. 21).

When asked if the officers could search his vehicle, Defendant refused. (H.T. 8/2/22, p. 27). The officers called for the K9 unit approximately nine (9) minutes after the initial stop. (H.T. 8/2/22, pp. 27-28). The K9 unit arrived approximately forty to forty-five (40-45) minutes later. (H.T. 8/2/22, p. 29). During that time Defendant was not handcuffed and was sitting on the bumper of the patrol vehicle. (H.T. 8/2/22, pp. 27, 29-30).

Trooper Matthew Klaips (hereinafter "Trooper Klaips") testified that he is the Trooper with the Bureau of Emergency Special Operations within the State Police of the Drug Protection K9 Handler's Station. Trooper Klaips was called out to conduct a K9 search of Defendant's vehicle on July 15, 2021. While conducting the search, Joi, the K9, showed an alert by the driver's door in that he began heavy nose breathing. (H.T. 8/2/22, p. 60). Joi was trained to smell cocaine, methamphetamine, heroin and marijuana. (H.T. 8/2/22, p. 61). This provided probable cause for Trooper Martin to tow Defendant's vehicle. (H.T. 8/2/22, p. 32).

On July 16, 2021, the police requested a search warrant which was issued for a search of the vehicle. As a result of the search, various items of controlled substances, drugs and drug paraphernalia were seized from the vehicle and form the basis for the charges against Defendant. On or about October 21, 2022, Defendant filed a Motion to Suppress asserting the police did not have reasonable suspicion to detain Defendant and/or the vehicle pending the arrival of the K9 unit and that the impoundment of the vehicle without a warrant was improper. Hearings thereon were conducted on August 2, 2022 and October 4, 2022. Following the same, the Motion to Suppress was denied by Court Order November 3, 2022.

A bench trial was held on March 27, 2023 and following the same the [c]ourt found Defendant guilty of Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13. Sentencing was held on May 2, 2023 and based upon an extensive and thorough Pre-Sentence Investigation, Defendant was sentenced [to an aggregate of

sixteen months to eighty-four months, incarceration, followed by one year probation].

Defendant filed a Post-Sentence Motion which was denied by [the trial court] on May 12, 2023. Defendant has filed an appeal to the Pennsylvania Superior Court asserting [the trial court's] denial of his Motion to Suppress was improper and that several of the counts of the possession of drug paraphernalia should have merged for sentencing purposes and as such, this matter is now ripe for discussion.

Tr. Ct. Op. at 1-6.

Appellant raises one question for our review:

WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT᾽S MOTION TO SUPPRESS EVIDENCE SEIZED FROM HIS PERSON AND FROM A VEHICLE THAT HE WAS OPERATING?

Appellant's Br. at 15.

In reviewing the denial of a suppression motion, we must determine:

whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted). In reviewing the denial of a suppression motion, we may only consider evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085-87 (Pa. 2013).

- 3 -

Appellant argues that the police did not have reasonable suspicion to detain him pending the arrival of the K9 unit, that the pat-down of Appellant and the seizure of the cigarettes from his person were a constitutional violation, and that the impoundment of his vehicle was improper. Appellant's Br. at 17. The Commonwealth contends that Appellant failed to establish that he had a reasonable expectation of privacy in the vehicle he was operating. Appellee's Br. at 11-12. We agree.

"A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." **Commonwealth v. Burton**, 973 A.2d 428, 435 (Pa. Super. 2009) (*en banc*).

> Standing requires a defendant to demonstrate one of the following: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element the element of possession; or (4) a proprietary or possessory interest in the searched premises. A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. The determination whether defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.
>
> With more specific reference to an automobile search, this Court has explained as follows: generally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched.

**Id.** (citations omitted).

In **Burton**, the driver was stopped for a routine traffic violation. When asked for his driver's license, registration, and insurance information, the driver presented a non-driver's license identification card and an expired rental agreement for the car. None of the car's occupants were the named lessee and none could establish their connection to the car or the named lessee. There we held:

> In the instant case, the vehicle was not owned by [Burton]. The vehicle was not registered in [Burton's] name. [Burton] offered no evidence that he was using the vehicle with the authorization or permission of the registered owner. [Burton] offered no evidence to explain his connection to the vehicle or his connection to the registered owner of the vehicle. [Burton] failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate.

*Id.* at 436.

Similarly, in **Commonwealth v. Maldonado**, 14 A.3d 907 (Pa. Super. 2011), an officer observed a car driving in front of him with an expired registration sticker and stopped the vehicle. The officer learned that the driver did not have a valid driver's license or proof of insurance for the vehicle, and the car was not registered to him. *Id.* at 909. Because the driver had no proof of ownership of the car and there were outstanding warrants for him, the officer arrested the driver and impounded the car. During an inventory search, a firearm and narcotics, *inter alia*, were uncovered. *Id*. We opined:

> At the suppression hearing, Maldonado bore the burden of establishing that he had a reasonable expectation of privacy in the automobile. At the suppression hearing, the Commonwealth presented only the testimony of Officer Buckman, and Maldonado

did not present any witnesses. The evidence elicited at that time establishes that the vehicle was owned by Vasquez [his girlfriend]. Officer Buckland testified, on cross-examination, that Maldonado told him that Vasquez was his girlfriend and that they lived together at the address to which the vehicle was registered. However, there was no evidence that Maldonado had permission from Vasquez to drive the car. When Maldonado's counsel asked Officer Buckman whether Maldonado told him that Vasquez had given him permission to drive her car, Officer Buckman stated only that he did not recall asking Maldonado that question. Of note, although it appears that Vasquez attended the suppression hearing, Maldonado did not call her to testify that she had given Maldonado permission to drive her car on the day in question.

The fact that Maldonado and Vasquez might have lived together and had a romantic relationship does not foreclose the possibility that Maldonado was driving Vasquez's vehicle without her knowledge or permission. For that reason, we conclude that Maldonado failed to establish an expectation of privacy in the vehicle he was driving, which "he did not own, that was not registered to him, and for which he has not shown authority to operate."

*Id.* at 911-12 (internal citations omitted).

Instantly, Appellant failed to make a showing that he had a reasonable privacy interest in the area searched. At the suppression hearings, Trooper Martin, Trooper Klaips, and Trooper Shipman testified. The testimony revealed that Appellant was stopped for traffic violations: an expired inspection sticker, illegally tinted windows, and an inoperable brake light. N.T. at 9-10, R.R. 48a-49a. Like the defendants' vehicles in *Burton* and *Maldonado*, the car Appellant was driving had an expired registration and he had no proof of ownership. N.T. at 17, R.R. 56a. Troopers Martin and Shipman both testified that they discovered that the car was registered to Charles Eberlin, Appellant's father, but neither Trooper stated Appellant apprised them of this fact. N.T.

at 40, R.R. 79a; N.T. at 82, R.R. 121a. There is no testimony that Appellant had his father's permission to use the car, that Appellant and his father reside together, or that his father was even aware of Appellant's use. Appellant did not testify, Appellant's father did not testify, and even if they resided at the same address, it would not foreclose the possibility that Appellant was driving his father's car without his father's knowledge or permission. **Maldonado, supra**. Appellant having his father's permission becomes even less likely given that the father could have been charged with violating the vehicle code had he permitted Appellant to drive the car in its condition. **See** 75 Pa.C.S. § 1575.

For these reasons, we conclude that Appellant failed to establish an expectation of privacy in the vehicle he was driving, which "he did not own, that was not registered to him, and for which he has not shown authority to operate." **Burton, Maldonado, supra**. Accordingly, we affirm the judgment of sentence and do not reach the issue presented by Appellant.

Judgment of sentence affirmed.

Judge Murray joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/16/2024